JOHN C. CASSIDY *et al.*, Plaintiffs, *v.* CYNTHIA LUBURICH, Defendant-Appellee.—(JOHN C. CASSIDY, JR., Plaintiff-Appellant.)

First District (3rd Division)   No. 76-316

Opinion filed May 18, 1977.

Elliot L. Bien, of Plunkett, Nisen, Elliott & Meier, of Chicago, for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robin J. Omahana, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This action for personal injuries and property damage arises out of an auto accident that occurred July 30, 1972. Suit was filed two years and two months after the incident. John C. Cassidy, Jr. (Cassidy, Jr.), who was 18 years old at the time of occurrence, sustained personal injuries and John C. Cassidy, Sr. (Cassidy), sustained property damage to his automobile when defendant, Cynthia Luburich, allegedly pulled out of a driveway onto Elmhurst Road and collided with the car being driven by Cassidy, Jr.

The count for property damage is pending in the trial court. The count

for personal injuries sustained by Cassidy, Jr., was involuntarily dismissed under section 48(1)(e) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 48(1)(e)) and this appeal is brought by Cassidy, Jr., under Supreme Court Rule 304(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 304(a)). Cassidy, Jr., contends that defendant's insurer induced the delay and defendant should therefore be estopped from asserting the defense of the two year statute of limitations on personal injury actions. Ill. Rev. Stat. 1973, ch. 83, par. 15.

By a prior agreement of counsel, the motion for involuntary dismissal was argued and submitted for the court's decision with no oral testimony. The evidence consists of Cassidy's deposition, four affidavits and two letters.

Cassidy testified by affidavit and deposition that his son, Cassidy, Jr., was taken from the scene of the accident to Holy Family Hospital where he was examined and released. Later that evening he collapsed at home and was taken back to the hospital and admitted "on an emergency basis." Subsequent to the accident Cassidy, Jr., suffered dizzy spells until about February 1974, and headaches which continued, though on an increasingly less frequent basis, until the time of the deposition, February 20, 1975. Shortly after the accident Cassidy contacted his insurance agent, Jordan A. Minerva, who contacted defendant's insurance company, Inter-Insurance Exchange of the Chicago Motor Club, and advised them of the accident and of the personal injuries sustained by Cassidy, Jr. Thomas Giuliano, an insurance adjuster for defendant's insurer, then contacted Cassidy about two weeks after the accident. Giuliano told him on at least ten occasions to get the bills and forward them to him and "Send the bills and we'll take care of them." He also advised Cassidy his company would settle the case when Cassidy, Jr., was released by the doctor. Cassidy was advised to hold all bills until that time. Giuliano also told Cassidy that his son, who had turned 18 years old just before the accident, had "until he's 21 years old to make a settlement."

Cassidy testified further that on August 10, 1973, Wayne Dzien, Assistant Manager of Inter-Insurance wrote to Cassidy requesting submission of bills and stated in that letter, which is part of the record:

> "Subsequent to our receipt and verification of same, I will instruct our adjuster Giuliano to contact you and hopefully dispose fairly of your pending case."

In conversations with Giuliano which continued until at least February 1974, Cassidy stated that he was unwilling to sign releases until he was sure that Cassidy, Jr.'s headaches were terminated. Cassidy was not "in any particular big hurry because [he] wasn't aware of any statute of limitations."

Cassidy stated that he spoke to Dzien on the phone on August 27, 1974,

more than two years after the accident and was advised again to send in his medical bills which he did the following day with a cover letter which is part of the record. Shortly thereafter, in September of 1974, Giuliano told him that the statute of limitations had expired. Cassidy did not know about the statute of limitations until Giuliano advised him that the statute had run and Cassidy was "flabbergasted to say the least," since he expected to submit the bills and to have them paid "without a lot of legal entanglements" as he had been led to believe.

Jordan A. Minerva in two affidavits testified that he was the insurance agent of plaintiff; that he spoke to plaintiff and Giuliano frequently between July 31, 1972, and July, 1974; that Giuliano on many occasions expressly admitted to plaintiff and to Minerva the liability of defendant's insurer for the claims of plaintiff, there remaining only the determination of medical costs and damages to be paid; that on many occasions Giuliano stated that plaintiff's claims would be settled when all medical costs were determined and when plaintiff executed a release therefrom; and that because of the delay caused by the foregoing requirements of defendant's insurer, plaintiff's insurer reimbursed plaintiff for the property damage to his automobile.

Thomas Giuliano by affidavit stated that he had several conversations with Minerva and plaintiff between July 31, 1972, and December 1972, but did not recall the substance of said conversations; that his file reflects no contacts between himself and plaintiff between December 1972 and August 10, 1973; that on November 5, 1973, he contacted plaintiff who told him he was too busy to discuss his son's accident and asked that he call him after the first of the year; that on February 5, 1974, he called plaintiff who told him his son seemed all right and was not having anymore dizzy spells or fainting spells and told him he would submit all medical bills as soon as he gathered all the material; that on August 20, 1974, his file was closed because the statute of limitations had expired; that his last contact with plaintiff was on September 13, 1974, when he advised him that the statute had run; and that at no time prior to September 13, 1974, had he ever discussed any statute of limitations with plaintiff.

The trial court granted defendant's motion for involuntary dismissal on the ground that the action was not commenced within the time limited by law.

■■ The sole issue on appeal is whether defendant is estopped by her conduct from asserting the two-year statute of limitations as a defense. Defendant argues that the actions of defendant's insurer were insufficient as a matter of law to constitute an estoppel. Defendant cites *Dickirson v. Pacific Mutual Life Insurance Co.* (1925), 319 Ill. 311, 318, 150 N.E. 256 for the general rule with regard to waiver or estoppel.

"The rule in this State and elsewhere, pertaining to waiver in a case of this kind, requires that the conduct of the party against whom such a waiver is claimed be such as to cause the other party to change his position by lulling him into a false security, thereby causing him to delay or waive the assertion of his rights to his damage. Negotiations for an adjustment of a claim which do not so justify the claimant in delaying action cannot estop the insurer from insisting upon a strict compliance with the conditions of the limitation. It is necessary and proper that claims of this character be investigated, and the fact that the insurer negotiates with the claimant is in nowise conduct amounting to a waiver by estoppel unless there is contained in the negotiation that which is calculated to lull the claimant into a false security. *Railway Passenger Conductors' Benefit Ass'n v. Loomis*, 142 Ill. 560; *Peoria Marine and Fire Ins. Co. v. Whitehill*, 25 id. 382; *Gorden v. Amoskeag Fire Ins. Co.*, 20 N.H. 73."

*Dickirson*, at page 319, goes on to say that generally questions such as waiver are questions of fact for the trier of fact and not reviewable here. See also *D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 347 N.E.2d 463; *Flagler v. Wessman* (1970), 130 Ill. App. 2d 491, 263 N.E.2d 630, *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 194 N.E.2d 565.

■■ However, since the evidence before the trial court in the instant case consisted entirely of transcripts and other documentary evidence, this court is not bound by the trial court's findings of fact but may make an original examination of the evidence and an independent decision on the facts. *Baker v. Rockabrand* (1886), 118 Ill. 365, 8 N.E. 456; *Inter-Insurance Exchange of the Chicago Motor Club v. Travelers Indemnity Co.* (1965), 57 Ill. App. 2d 17, 206 N.E.2d 518; *In re Estate of Deskovic* (1959), 21 Ill. App. 2d 209, 157 N.E.2d 769.

Defendant cites a number of cases to support the proposition that the actions of defendant's insurer were insufficient as a matter of law to constitute an estoppel.

In two of the cases cited by defendant, *Jackson v. Hoover* (1974), 24 Ill. App. 3d 358, 321 N.E.2d 348, and *Flagler v. Wessman* (1970), 130 Ill. App. 2d 491, 263 N.E.2d 630, the appellate court reversed the dismissals and remanded the cases for jury trials on the issue of estoppel. These cases support the proposition that the issue of estoppel is generally a question of fact for the trier of fact. Defendant apparently argues that since this is a question of fact, the trial court, as the trier of fact, has already decided the issue in the instant case. As we noted above, this court can make an original examination of the facts because of the wholly documentary nature of the evidence.

In *D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 347 N.E.2d 463,

*Chapman v. Huttenlocher* (1970), 125 Ill. App. 2d 39, 259 N.E.2d 836, and *Devlin v. Wantroba* (1966), 72 Ill. App. 2d 383, 218 N.E.2d 496, the appellate court affirmed the trial court's dismissals of the suits, and in *Arthur L. Larsen Co. v. Shefner* (1975), 27 Ill. App. 3d 562, 327 N.E.2d 257, it reversed judgment for the plaintiff, finding in all four cases that there was no conduct on the part of the insurer which was calculated to lull the plaintiff into a false security or in fact had that effect. These cases are distinguishable on the facts from the instant case.

In *D'Urso*, plaintiff was represented by an attorney and his contacts with the insurance company were minimal. In *Chapman*, the attorney was negotiating with the representative of the insurance company. The trial court denied the motion to dismiss as a matter of law, proceeded to hear the motion as a fact question and found for the defendant. On appeal the appellate court said that when considered as a whole the finding was not against the manifest weight of the evidence. In *Devlin*, the plaintiff was told he would not need an attorney but plaintiff hired one anyway. That attorney was not told that he should not file suit. In *Larsen*, there was nothing in the record to show plaintiff was lulled other than the fact that the defendant did not dispute liability but offered less in settlement. Nothing in the record indicated that the plaintiff entertained any belief that the claim would be settled without dispute.

In the instant case the evidence shows that Cassidy notified his insurer immediately after the incident. His insurance agent, Minerva, notified defendant's insurer and its agent Giuliano was in frequent communication with Cassidy and Minerva. He requested on several occasions that Cassidy submit medical bills and "we'll take care of them." He also told Cassidy that he had until Cassidy, Jr., was 21 years old to make a settlement. Until August 24, 1971, less than a year before the accident, the law of Illinois stated that males of age 21 shall be considered of legal age. (Ill. Rev. Stat. 1969, ch. 3, par. 131.) After that date males and females were considered of legal age at 18. (Ill. Rev. Stat. 1973, ch. 3, par. 131.) Whether Giuliano was aware of the then recent change in the law is immaterial. Cassidy testified specifically that Giuliano told him in at least one of their early conversations that he had at least until Cassidy, Jr., was 21 years old to make a settlement. Giuliano, on the other hand, is vague as to the content of those conversations between August 1972 and December 1972, although later in his affidavit he states that he never discussed the statute of limitations with Cassidy prior to September 13, 1974, after the statute had run. Cassidy testified that he was not "in any particular big hurry because [he] wasn't aware of any statute of limitations," and when told the statute had run, he was "flabbergasted to say the least."

In August of 1973 defendant's insurer's assistant manager, Dzien, sent Cassidy a letter requesting bills and saying that upon receipt and

verification Dzien would instruct adjuster Giuliano to contact Cassidy and "hopefully dispose fairly of your pending case." Cassidy spoke to Dzien in August 1974, more than two years after the accident and about one month after the statute had run, and pursuant to that conversation Cassidy, on the following day, submitted medical bills which Dzien had requested. Cassidy was not told at that time that the statute of limitations had run. He was aware of that fact only after Giuliano so informed him on September 13, 1974. Cassidy hired an attorney and filed suit October 1, 1974, only after defendant's insurer had told him that they were not liable because of the statute.

■■ From the above recited testimony we draw the conclusion that Cassidy was lulled by the conduct of defendant's insurer into a false sense of security which caused him to delay assertion of his rights to damages. The conduct of the insurer induced in Cassidy a reasonable belief that his claim would be settled without suit and such conduct by the insurer constituted a waiver by estoppel to raising the defense of the statute of limitations. The judgment of the circuit court of Cook County is reversed and the cause is remanded to the trial court.

Reversed and remanded.

McNAMARA and McGILLICUDDY, JJ., concur.