FRANK MYERS, SR., Plaintiff-Appellant, *v.* CENTRALIA CARTAGE CO., *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-560

Opinion filed March 26, 1981.

Dowd & Dowd, Ltd., of Chicago (Joel S. Ostrow, of counsel), for appellant.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Lloyd E. Williams, Jr., and Edmond W. Foley, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Frank Myers, Sr., appeals from an order dismissing his personal injury action brought against defendants, Centralia Cartage Company, Associated Truck Lines, Inc.,[1] and Frank Vitaco. On appeal plaintiff contends the trial court erred in dismissing the action based on defendants' statute of limitations defense. Plaintiff asserts that a question of fact exists as to whether the conduct of defendants' insurer caused plaintiff to file his lawsuit after the statute of limitations had run.

We affirm.

On September 4, 1979, plaintiff filed a complaint for personal injuries allegedly resulting from a June 29, 1977, accident on the premises of Centralia Cartage Company (Centralia). The complaint charges that, on that date, Frank Vitaco, an employee of Centralia, negligently operated a forklift causing a "skid" to fall from the forklift and injure plaintiff.

Defendants filed a section 48 motion to dismiss (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i)) asserting that plaintiff's action was barred by the applicable two year statute of limitations (Ill. Rev. Stat. 1977, ch. 83, par. 15). Plaintiff's response denied that the running of the statute of limitations barred the action because the conduct of defendants' insurer was responsible for plaintiff's late filing of his lawsuit. As a consequence of the actions of defendants' insurer, plaintiff contends that defendants should be estopped from asserting the statute of limitations defense.

Plaintiff's supporting affidavit set forth the pertinent facts as follows:
"＊ ＊ ＊

3. On [the day of the injury] I was taken to Midway Clinic for treatment by agents and servants of CENTRALIA CARTAGE CO.;

4. After approximately nine (9) days at Midway Clinic, a woman employee of the Clinic informed me that CARRIERS INSUR-

---

[1] Associated Truck Lines, Inc., purchased Centralia Cartage Company after the cause of action arose.

ANCE, my employer's insurance company, had approved my transfer to Holy Cross Hospital;

* * *

6. After I was discharged from Holy Cross approximately six (6) weeks after the accident, a man identifying himself as BILL WALLRAB from 'compensation insurance' came to my house and took a statement from me regarding the accident, MR. WALLRAB led me to believe he was from my employer's insurance company;

* * *

8. The only statute of limitations I was ever advised of was through a woman at the Industrial Commission who said I had three (3) years from the date of my accident or two (2) years from the date of my last temporary check to bring a claim;

9. BILL WALLRAB called my house in about November, 1977; I called my employer's insurance company and was informed that he was not employed by them but by the insurance company for CENTRALIA CARTAGE CO.;

10. Representatives of CARRIERS INSURANCE advised me to negotiate with MR. WALLRAB because CARRIERS would have to approve any settlement and would protect me;

11. MR. WALLRAB would call my house and speak to my wife or myself approximately once every five (5) or six (6) weeks; each time he would inform us that certain papers and documents were needed, that he was in the process of gathering them, that approval and review was being ascertained through his home office in Texas and that he was attempting to settle the matter;

12. Each time MR. WALLRAB called, I would contact my employer's insurance company as its representatives had instructed me to do;

13. MR. WALLRAB called me on or about March 25, 1979 and told me he was sending some papers to Texas and my case would be settled within two (2) weeks;

14. On or about May 15, 1979, I was informed by a representative of CARRIERS INSURANCE CO. that MR. WALLRAB had not yet settled the claim;

15. On or about June 15, 1979, my wife called MR. WALLRAB'S office and left a message for him to call me back;

16. MR. WALLRAB returned the call after June 29, 1979 and informed me that the statute of limitations had run and he would not settle my claim."

Defendants responded that plaintiff's affidavit failed to show that defendants' conduct caused plaintiff to file an untimely lawsuit. The affidavit, defendants assert, did not reveal any conduct on the part of

defendants or their representatives which exceeded mere investigation or negotiation. The supporting affidavit of William Wallrab, the insurance adjuster investigating the claim on behalf of defendants, acknowledged that there was frequent contact between plaintiff and Wallrab and that Wallrab attempted to obtain a settlement demand. Wallrab, however, never received a settlement demand from plaintiff and Wallrab never made any settlement offer nor did he reject any request, since none was made. Wallrab also denied that he had conceded liability or had promised to settle. He also denied that he had told plaintiff not to initiate legal proceedings or that he had identified himself as a representative of Carrier Insurance or "Compensation Insurance." To his knowledge, his company had never made any payments to the plaintiff.

Wallrab further asserted that, approximately four months prior to the last day of the limitations period, the insurance company decided that negotiations with plaintiff should be discontinued until plaintiff's workmen's compensation claim was settled. In the early part of 1979, Wallrab informed plaintiff of the insurance company's decision. He also told plaintiff that plaintiff could seek compensation from "two sources" and each "source" had a different statute of limitations "which he should concern himself with." Wallrab also stated that his last contact with plaintiff was approximately February 16, 1979. Wallrab denied that he had called plaintiff to tell him the statute of limitations had expired. Finally, Wallrab asserted that there were no settlement negotiations after the limitations period had expired.

The trial court granted defendants' motion to dismiss. The trial court also found that there were "no genuine disputed questions of fact" under section 48 (Ill. Rev. Stat. 1977, ch. 110, par. 48) as to the existence of "any lulling on the part of defendants' insurer." The trial court further noted that "plaintiff's factual allegations disclose only that defendants' actions constitute mere negotiation and nothing more."

Opinion

I

Plaintiff contends that a factual dispute exists as to whether or not the conduct of defendants' insurance company exceeded mere negotiation and, therefore, defendant should be estopped from asserting the statute of limitations defense.

■■ A defendant may be estopped from raising the defense of the statute of limitations if the conduct of his insurance carrier induces in plaintiff a reasonable belief that plaintiff's claim will be settled without suit. (*Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90.) The mere pendency of negotiations conducted in good faith and with a view of com-

promise, during the period of the statute of limitations, however, is not sufficient to show a waiver of the statute and does not estop the defendant from asserting the defense. *Arthur L. Larsen Co. v. Shefner* (1975), 27 Ill. App. 3d 562, 327 N.E.2d 257; *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 194 N.E.2d 565.

■■ ■ Evidence of conduct by the insurer which induces plaintiff to reasonably believe his claim will be settled without suit or lulls plaintiff into a false sense of security which causes him to delay the assertion of his rights creates, for the trier of fact, an issue as to whether the conduct constitutes an estoppel. (*Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90; *D'urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 347 N.E.2d 463.) Nevertheless, if there is no evidence of such conduct, the court may dispose of the motion to dismiss for untimely filing as a matter of law. (*Hurtt v. Davidson; D'urso v. Wildheim.*) In determining the decision to render on the motion, the court looks to the pleadings, affidavits, or other proofs presented by the parties. Ill. Rev. Stat. 1977, ch. 110, par. 48(3); *Hurtt v. Davidson.*

■■ As plaintiff concedes, cases in which an insurer's conduct is found to amount to an estoppel typically involve a concession of liability by the insurer (see, *e.g., Cassidy v. Luburich* (1977), 49 Ill. App. 3d 596, 364 N.E.2d 315; *Wells v. Lueber* (1976), 43 Ill. App. 3d 973, 358 N.E.2d 293), advance payments made by the insurer to the plaintiff in contemplation of eventual settlement (see, *e.g., Wells v. Lueber; Flagler v. Wessman* (1970), 130 Ill. App. 2d 491, 263 N.E.2d 630), and statements by the insurer which encourage plaintiff to delay filing his action. (*Cassidy v. Luburich* (1977), 49 Ill. App. 3d 596, 364 N.E.2d 315; *Wells v. Lueber* (1976), 43 Ill. App. 3d 973, 358 N.E.2d 293.) A party claiming estoppel also must establish that he reasonably relied upon the conduct and representations of the party against whom the estoppel is asserted. *McCue v. Colantoni* (1980), 80 Ill. App. 3d 731, 400 N.E.2d 683.

Plaintiff's affidavit fails to assert any concession of liability by defendants' insurer or the making of advance payments by defendants' insurer in contemplation of eventual settlement. Although plaintiff did receive medical treatment at defendant Centralia's clinic, this is hardly tantamount to an advance payment in contemplation of eventual settlement. Further, defendants' insurer had not yet contacted plaintiff at this time.

Plaintiff nonetheless asserts that Wallrab's conduct "created a reliance encouraging delay." The facts in plaintiff's affidavit do not support this contention. The only conduct by *defendants' insurer*, set forth in plaintiff's affidavit, which plaintiff could have reasonably relied upon was Wallrab's statement that he was "attempting" to settle the matter.

Wallrab later indicated the insurer "would settle" in two weeks; however, prior to expiration of the limitations period and almost one month after the statement the insurance company of plaintiff's employer informed him that the claim had not been settled. Similarly, plaintiff's affidavit establishes that he could not have relied upon Wallrab's statement that he, Wallrab, was from "Compensation Insurance" because, several months prior to the end of the limitation period, the insurance company of plaintiff's employer told plaintiff that Wallrab worked for defendants' insurer.

■■ Plaintiff also argues that Wallrab took advantage of plaintiff's "obvious confusion" about the different time limitation periods for his common law and workmen's compensation claims. Plaintiff's affidavit does not allege that he was confused or that Wallrab caused him to be confused about the different time periods; rather, the affidavit alleges a woman in the workmen's compensation office explained the time limits for only plaintiff's workmen's compensation claim. The affidavit also does not claim that plaintiff informed Wallrab of his confusion. Thus, like plaintiff, we do not view as significant Wallrab's allegation that he told plaintiff his company decided to wait until the workmen's compensation claim was settled before they settled the common law claim. Such a statement can hardly be described as one which would lull plaintiff into a false sense of security, thereby causing him to delay the assertion of his rights by filing his lawsuit after the limitation period had run.

Plaintiff also argues that since he was without benefit of counsel, the insurer's conduct should be more closely scrutinized. While this can be an important factor, it does not apply here because plaintiff's affidavit failed to allege that he was without benefit of counsel. It was plaintiff's duty to establish that he was without benefit of counsel; since he did not, he cannot now rely on that assertion. *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90.

In our view, plaintiff's affidavit fails to establish conduct on the part of defendants' insurer that went beyond mere negotiations and investigation. Although Wallrab stated he was attempting to settle the matter, plaintiff did not allege that they had reached a definite agreement or that they had discussed any specific amount of monetary settlement. Prior to the expiration of the limitation period, and almost one month after Wallrab said that the claim would be settled in two weeks, plaintiff was informed that the claim had not been settled. Thus, plaintiff could not have reasonably believed or relied upon Wallrab's statement.

■■ Finally, we necessarily conclude that there was no factual issue presented by the affidavits showing that the insurer's conduct exceeded the bounds of mere investigation and negotiation. Accordingly, we find the issue of estoppel was properly disposed of by the trial court as a matter of

law. (*Martin v. Levinson* (1980), ⎯ Ind. App. ⎯, 409 N.E.2d 1239.) In our view, the trial court correctly dismissed plaintiff's action as time-barred.

For the reasons expressed herein, the order of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P. J., and JOHNSON, J., concur.