AXIA, INC., Plaintiff-Appellant, v. I. C. HARBOUR CONSTRUCTION COMPANY *et al.*, Defendants-Appellees

Second District No. 85—0356

Opinion filed December 12, 1986.

James S. Barber, Joel S. Siegel, and Rose Melikan, all of Arvey, Hodes, Costello & Burman, of Chicago, for appellant.

Matthew W. LaKoma and Eugene G. Callahan, both of Callahan, Fitzpatrick, Hirst & LaKoma, of Oak Brook, and James M. Hoey, James T. Ferrini, Mayer Goldberg, and Lisa Marco Kouba, all of Clausen, Miller, Gorman, Caffrey & Witous, of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, AXIA, Inc., a Delaware corporation, formerly known as Bliss & Laughin Industries, Inc., filed a complaint seeking damages from defendants, I. C. Harbour Construction Company (Harbour) and Shaw and Associates, Inc. (Shaw), alleging that Harbour, as the contractor, and Shaw, as the architect, breached a written contract to construct an office building for plaintiff. Each defendant filed a motion to dismiss pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(5)) asserting that the action was not brought within the two-year time limitation as then set forth in section 13—214(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)), now amended to a four-year term limitation not applicable hereto (Ill. Rev. Stat. 1985, ch. 110, par. 13—214(a)). The trial court dismissed the complaint as being time barred. This court originally reversed the trial court's decision in an

order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23) based upon the holding in *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1985), 135 Ill. App. 3d 765, 482 N.E.2d 155, that the statute of limitations relied upon was unconstitutional. After our supreme court upheld the constitutionality of section 13—214(a) (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)) (*People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252), the defendants' motions for rehearing were granted, and the order was withdrawn. We now address the merits of the appeal.

The issue raised by plaintiff is whether the trial court erred in dismissing plaintiff's complaint as being barred by the statute of limitations.

According to the complaint, plaintiff entered into a written contract with Harbour on June 10, 1977, for the construction of a new three-story office building. The written agreement contained a provision stating that the contractor warranted that all work would be of good quality, free from faults and defects, and in conformance with the contract documents. It also contained a provision requiring the contractor to correct any defect in the building appearing within one year upon written notification by the owner. Plaintiff also entered into a written contract on June 24, 1977, with Shaw to design the office building. Under the terms of this contract, Shaw was required to prepare the drawings and specifications for the building and to periodically examine the construction to determine if the quality of work was in accordance with the contracts. The building was completed in the fall of 1978, and plaintiff and its tenants took possession of the building.

Shortly after completion, the building began to leak extensively after rain. Additionally, a white powdery deposit, described in the complaint as efflorescence, began covering the outside of the building as well as appearing on some inside walls. Within one year of completion of the building, plaintiff notified both Harbour and Shaw of the water-leakage problems and requested that they correct these conditions. Plaintiff alleged in the complaint that Harbour attempted to correct the water-leakage problems by caulking mortar joints and applying water-resistant sealer. The remedial measures were unsuccessful.

Plaintiff employed a consulting firm in July 1983 to investigate and determine the cause of the water-leakage problem. The consulting firm issued its report in September 1983 concerning the apparent causes of the conditions and its recommendations for correcting the conditions. Plaintiff sent copies of the report to Harbour and Shaw.

The report indicated both design and construction deficiencies. The parties then met, and plaintiff stated the corrective work suggested in the report should be done. Harbour obtained other bids for the work and sent a letter to plaintiff requesting instructions. Thereafter, on November 11, 1983, plaintiff notified Harbour that if Harbour failed to commence and complete the corrective work, plaintiff would complete the work and hold Harbour responsible for the cost of the work under the contract. Harbour took no action, and plaintiff hired another contractor to perform the repair work. Ten months later, on September 17, 1984, plaintiff filed the complaint in this action.

Harbour and Shaw each moved to dismiss the complaint alleging that the action was barred by the applicable two-year statute of limitations set forth in section 13—214(a) (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)). In particular, each defendant asserted that the water-leakage problem manifested itself shortly after the completion of the building in 1978, yet the complaint was not filed in this action until September 17, 1984.

Plaintiff filed an "Amended Answer to Motion to Dismiss" to each motion arguing that Harbour and Shaw are estopped from asserting the statute of limitations because their conduct led plaintiff to believe that the situation would be remedied. In support of its opposition to the motions to dismiss, plaintiff also submitted the affidavit of Donald R. Pacey, one of plaintiff's managers. Pacey generally reaffirmed the allegations contained in the complaint. Specifically, he stated that in 1979, 1980, and 1981, as well as on January 27 and 31, May 2, and September 13, 1983, he sent letters to Harbour either requesting it to perform corrective work or inquiring about the status of the corrective work. Only the 1983 letters, however, were attached to the affidavit. Pacey also stated that he sent similar letters to Shaw in 1979, 1980, 1981, and on January 31, 1983. Only the 1983 letter was attached. In addition, Pacey stated that from time to time from 1979 to 1983, Harbour inspected the building and performed tests to determine the cause of the problems. Harbour also performed work on the structure which included a sealant to some of the bricks in 1979, washing down the exterior of the building and coating it with sealant in 1980, caulking a structural crack in 1982, and applying a sealant to the penthouse wall in 1983.

Pacey further stated that in February 1983, plaintiff met with both Harbour and Shaw concerning additional corrective work. He states that Harbour proposed to further investigate the use of a particular sealant, and that Shaw indicated that it would explore the problems and have a waterproof expert submit an estimate. The par-

ties also met on September 26, 1983, after plaintiff's consultant had submitted its report. Harbour indicated it would obtain bids for the work recommended in the report. After Harbour sent the bids to plaintiff and requested further instructions, plaintiff notified Harbour to commence the repair work and informed Harbour that failure to do so would result in plaintiff having the work done by another contractor and holding Harbour responsible for the cost. The trial court dismissed the complaint because it was barred by the statute of limitations (see Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)), particularly noting that the doctrine of estoppel did not apply to the defendants' actions. The court also found that even if the doctrine of estoppel was applicable, plaintiff's 10-month delay from the time of its last demand for satisfaction and the filing of the lawsuit barred it from proceeding against Shaw and Harbour under the equitable doctrine of *laches*.

■ Plaintiff initially contends that the court improperly dismissed the complaint as time barred by the statute of limitations because the actionable breach of the contracts underlying the complaint asserted against both Harbour and Shaw was Harbour's refusal to perform the recommended repair work which occurred in November 1983, and its subsequent refusal to pay for the costs of having the repair work completed. Our review of the record reveals that this issue was never presented to the trial court. The complaint asserted a breach of contract action based upon the improper design and construction of the office building and was not predicated on the failure to comply with a specific provision of the contract concerning a responsibility to pay for repair costs. In addition, plaintiff's response to the motions to dismiss failed to assert this claim in opposition to the statute of limitations defense. As it is axiomatic that questions not raised in the trial cannot be raised for the first time on appeal and are deemed waived (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 77, 491 N.E.2d 1160; *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872), we conclude that plaintiff has waived review of this contention.

■ ■ Plaintiff also argues in its reply brief that because it had no knowledge of the real cause of the problem until the September 1983 report was issued, the action did not accrue until September 1983. It also argues that Shaw's obligation was to supervise Harbour and that Shaw's breach flowed from Harbour's breach. Arguments not raised in the initial brief, however, are also deemed waived for purposes of review. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 393, 469 N.E.2d 1085; *Resudek v. Sberna* (1985), 132 Ill. App. 3d 783, 791, 477 N.E.2d 789.) Even if we were to ignore the waiver doctrine, plaintiff's argu-

ments are without merit. First, the statute of limitations begins to run when a party becomes possessed with sufficient information concerning its injury and the causes of the injury to put a reasonable person on inquiry to determine whether actionable conduct is involved. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 153-54, 485 N.E.2d 1076; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 415, 430 N.E.2d 976.) Plaintiff's alleged notification of Harbour of the water-leakage problem within one year of the 1978 completion indicates that it possessed the requisite amount of information necessary to further inquire whether the problem was actionable. Second, Shaw had no obligation to repair. While it did have an obligation to guard against defects, the breach occasioned by the failure to supervise Harbour's work occurred when the defects manifested themselves within one year of the 1978 completion of the building.

Plaintiff next contends that even if the cause of action for breach of contract accrued when it discovered the water-leakage problem, the trial court still improperly dismissed the complaint as barred by the statute of limitations because any delay in the filing of the lawsuit was caused by the defendants' conduct. Plaintiff presents three separate arguments in support of this contention.

■ First, plaintiff argues that both Harbour and Shaw undertook remedial actions to correct the problems constituting acknowledgements of liability which tolled the running of the applicable two-year statute of limitations. The defendants both respond that this issue is also waived as plaintiff did not raise this issue below. Plaintiff, however, did present this argument to the trial court in its answers to the defendants' motions to dismiss. Although plaintiff preserved this issue for our review, it has failed to cite in its brief any authority to support its contention that the acts of the defendants operated to "toll" the running of the statute of limitations period. The statute itself does not provide for any exception which would toll, or delay, the running of the statute, as it is an established rule regarding the statute of limitations that no exceptions which toll the statute or enlarge the scope will be implied (*Hamil v. Vidal* (1985), 140 Ill. App. 3d 201, 204, 488 N.E.2d 1024; *Severe v. Miller* (1983), 120 Ill. App. 3d 550, 555, 458 N.E.2d 173), we choose not to add an exception to section 13—214(a) (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)).

■ Second, plaintiff argues that the circumstances here are analogous to situations involving a second, or new, promise to pay a past-due debt. (See *Hurtt v. Steven* (1947), 333 Ill. App. 181, 185, 77 N.E.2d 204.) We find such an analogy inappropriate. A new promise

to pay a past-due debt which removes a case from the running of the statute of limitations is unlike a normal bargain in that it creates a new debt without creating new reciprocal rights. (See *Schmidt v. Desser* (1980), 81 Ill. App. 3d 940, 942-44, 401 N.E.2d 1299.) Essentially, it revives an old debt conclusively presumed paid after the statute of limitations has expired, and this revival can be accomplished only by an explicit agreement. (81 Ill. App. 3d 940, 943, 401 N.E.2d 1299.) Here, the allegations in the complaint and the affidavit indicate only an attempt by Harbour to alleviate existing problems with its construction of the building, not an attempt to create a new bargain. Additionally, some of the alleged repair work relied upon by plaintiff was performed prior to the running of the two-year period for the statute of limitations, and, therefore, cannot be utilized in fashioning a "new" promise. Further, plaintiff does not allege any explicit agreement or conduct by either Harbour or Shaw occurring after the expiration of the two-year period which could have demonstrated a willingness to revive an old obligation.

■ Finally, plaintiff contends that the defendants are estopped from raising the statute of limitations as a bar to this action as the actions and representations of both Harbour and Shaw indicate an intent by the defendants to remedy the defects in the building thereby inducing plaintiff to refrain from commencing a lawsuit until the defendants' refusal to repair after the time period under the statute had run. The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the damage of the other party. (*Dill v. Widman* (1952), 413 Ill. 448, 455, 109 N.E.2d 765.) Estoppel is not appropriate, however, unless the party seeking to invoke the doctrine has suffered a detriment as a result of its actual reliance upon the words or conduct of the party it seeks to estop. (*Courson v. Industrial Com.* (1983), 98 Ill. 2d 1, 8-9, 455 N.E.2d 78; *Finley v. Finley* (1980), 81 Ill. 2d 317, 330, 410 N.E.2d 12.) The principle of equitable estoppel has been employed to bar inequitable reliance on statutes of limitations (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 158-59, 421 N.E.2d 869; *People ex rel. Andrews v. Andrews* (1981), 94 Ill. App. 3d 84, 85-86, 418 N.E.2d 470; *Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 223-27, 243 N.E.2d 723; see also *Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1142-44, 419 N.E.2d 465), and the doctrine has been held to include unintentional deception (*Witherell v. Wiemer* (1981), 85 Ill. 2d 146, 159, 421 N.E.2d 869).

■ Both Harbour and Shaw argue that their actions were not sufficient to induce plaintiff to delay bringing suit. Shaw contends that it never admitted liability and that it never represented that Harbour's work would rectify the problems. Harbour likewise contends that it never represented that it was liable for the defects or that it would work out a settlement with plaintiff, or even that it would continue to attempt to repair the problems. The trial court determined that because the parties were relatively commercially sophisticated, the doctrine of estoppel did not apply to them under these circumstances for to do so would only chill any settlement efforts. As it is incumbent upon the plaintiff to show sufficient facts to avoid the statute of limitations when a defendant raises a statute of limitations defense in a motion to dismiss (*Burnett v. West Madison State Bank* (1940), 375 Ill. 402, 408, 31 N.E.2d 776; *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 613, 483 N.E.2d 613; *Cuerton v. American Hospital Supply Corp.* (1985), 136 Ill. App. 3d 231, 237, 482 N.E.2d 187), the essential question presented is whether plaintiff demonstrated that the words or actions of the defendants induced plaintiff to reasonably rely to its detriment by failing to timely file this lawsuit.

■■ Initially, as to Shaw, the record is devoid of any allegations that it had any contact with plaintiff after the completion of the building until the meeting in 1983, more than three years after the water-leakage problem was discovered. There are only the allegations that plaintiff sent some letters to Shaw; however, there are no allegations that Shaw responded to these letters. Pacey's affidavit asserts conduct by Shaw which occurred after the expiration of the two-year period as inducing its reliance. Post-expiration conduct could be considered as additional evidence in determining whether there has been estoppel. Where, however, as in this case, there is no preexpiration conduct sufficient to induce any reasonable reliance, the post-expiration conduct illustrates nothing. (See *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 684, 406 N.E.2d 90.) There are no allegations in either the complaint or the affidavit of any words or actions of Shaw, other than Pacey's conclusion that Shaw continually attempted to find a cause of the problems, upon which plaintiff could have reasonably relied upon prior to the expiration of the two-year period. Therefore, we conclude that it would be incorrect to hold Shaw equitably estopped from asserting the statute of limitations as a bar to plaintiff's action.

While plaintiff failed to show conduct by the defendant Shaw sufficient to apply equitable estoppel, Pacey's affidavit sets forth four instances, in 1979, 1980, and 1982, where the additional defendant,

Harbour, undertook repairs of the building. It is also generally asserted that "from time to time from 1979 through 1983 Harbour inspected the premises and performed tests to determine the cause of the problem." Plaintiff argues that, because of these efforts to repair the building and its acts and representations, Harbour is equitably estopped from raising the statute of limitations as a bar to its breach of contract action. Harbour responds that the facts show only that "mere negotiations and investigations were conducted by Harbour with plaintiff and as such, no estoppel can arise."

The issue of whether efforts to repair estop a party from asserting the statute of limitations as a bar to a cause of action has been treated in a number of other jurisdictions with varying results. See, *e.g.*, *Torcon, Inc. v. Alexian Brothers Hospital* (1985), 205 N.J. Super. 428, 501 A.2d 182 (plaintiff unable to demonstrate attempted repairs amounted to either misrepresentation or concealment thereby precluding the invocation of estoppel); *Ranker v. Skyline Corp.* (1985), 342 Pa. Super. 510, 493 A.2d 706 (generally repairs do not toll the statute of limitations unless there have been representations that the repairs have or would cure the defect); *Bethesda Lutheran Church v. Twin City Construction Co.* (Minn. App. 1984), 356 N.W.2d 344 (the written representation and other oral promises to repair which would cure problem induced delay in filing legal action sufficient to form estoppel); *Beckenstein v. Potter & Carrier, Inc.* (1983), 191 Conn. 150, 464 A.2d 18 (must at least allege actual reliance upon the repairs being made as the basis for not filing a lawsuit); *Mason v. County of Mobile* (Ala. 1982), 410 So. 2d 19 (representations that problem would be corrected thereby misleading a party served as a delay in bringing action invoking estoppel); *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.* (1980), 221 Va. 81, 266 S.E.2d 887 (repairs by roofer do not toll statute absent basis for fraud by a charge of bad faith and intentionally misrepresenting the truth); *Little Rock School District of Pulaski County v. Celotex Corp.* (1978), 264 Ark. 757, 574 S.W.2d 669 (a vendor's insistence that a problem can be corrected or repaired and attempts to do so could toll the statute of limitations).

In the only remotely relevant Illinois authority, it was held that "efforts to repair do not toll the statute [of limitations]." (*Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 710, 377 N.E.2d 224.) *Tomes*, however, involved an action by a purchaser of a boat seeking damages for defects in the manufacture of the boat under the warranty provisions of the Uniform Commercial Code and did not address an equitable estoppel contention. The decision in a one-sentence statement only addressed a "tolling" argument. This case is inapposite and

is of no assistance here. 60 Ill. App. 3d 707, 708-09, 377 N.E.2d 224.

Additionally, Harbour analogizes this case with the cases involving settlement negotiations by insurance carriers with a claimant. (See *Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 419 N.E.2d 465; *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90.) The conduct of a defendant's insurer which induces a plaintiff to reasonably believe that a claim will be settled can estop that defendant from raising the defense of the statute of limitations. (See *Sponemann v. Country Mutual Insurance Co.* (1983), 120 Ill. App. 3d 211, 219, 457 N.E.2d 1031; *Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1142, 419 N.E.2d 465.) The mere pendency of negotiations conducted in good faith, however, is insufficient to estop the defendant. (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1142-43, 419 N.E.2d 465.) Conduct found to support a reasonable belief sufficient to establish an estoppel appear to involve affirmative acts by the insurer to prevent the filing of a lawsuit. See *Cassidy v. Luburich* (1977), 49 Ill. App. 3d 596, 364 N.E.2d 315 (concession of liability by the insurer); *Wells v. Lueber* (1976), 43 Ill. App. 3d 973, 358 N.E.2d 293 (advance payments to the injured party in contemplation of settlement); see also *Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 683, 406 N.E.2d 90 (pointing out that statements by insurance carrier encouraging settlement prevent the application of estoppel).

 In the context of the facts presented here, we conclude that Harbour's conduct was sufficient to establish an estoppel to prevent Harbour from shielding itself with the limitations bar. Within one year of the completion of the building, plaintiff notified Harbour of water leakage and efflorescence on the outside brick. Numerous telephone conversations between the parties about these conditions were exchanged, and Harbour not only inspected the premises and conducted tests but also performed corrective work on the building for over a four-year period. In 1979, Harbour applied a sealant to the bricks in some areas; in 1980, Harbour washed down the exterior of the building and coated the building with a sealant; in 1982, Harbour caulked a structural crack around the crown of the building; and in 1983, Harbour applied sealant to the penthouse wall. When these measures did not solve the problems, both parties employed experts to examine the premises and submit bids for corrective work. Following the submission of the proposals by these firms, Harbour wrote plaintiff on October 27, 1983, and requested its review and suggested action. After this exchange, the parties apparently could not agree on a further course of action, and a lawsuit was later filed by plaintiff.

It is evident that from 1979 through October 1983 Harbour engaged in continuing conduct to repair and correct the problems with the building. Harbour was not merely engaging in negotiation and investigation of the problems, but took affirmative steps to remedy the matters in apparent acknowledgement of its responsibility under the contract. There is nothing in the record to show that during the limitations period Harbour disputed its responsibility for correcting the problems. This apparent acknowledgement is further buttressed by the fact that Harbour obtained bids for the work recommended in the 1983 report concerning the causes of the problems and the recommendations for repair. While there was no express mention of the statute of limitations, there is clearly a reliance by plaintiff on Harbour's aforementioned conduct to correct the problems, the natural effect of which was to forebear legal action. Under the circumstances alleged in the complaint and affidavit to be present here, we conclude that Harbour's conduct estops it from asserting the statute of limitations.

■■ Harbour also contends on appeal that the doctrine of *laches* should apply to bar plaintiff from obtaining relief. This affirmative matter, however, was not raised in Harbour's motion to dismiss (see Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)) and was only alluded to in Harbour's reply to plaintiff's amended answer to the motion to dismiss where Harbour asserted that plaintiff "cannot rely on the estoppel doctrine since ten (10) months passed before the present suit was filed." Although the trial judge stated in his findings that even if estoppel against Harbour was applicable, the doctrine of *laches* would prevent plaintiff's action because of the 10-month delay in filing suit, this defense simply was not properly raised, nor was plaintiff given an opportunity below to dispute it. In any event, on the record before us, Harbour has not established any prejudice to invoke the doctrine of *laches*.

For the foregoing reasons, the part of the judgment dismissing Shaw is affirmed and the judgment dismissing Harbour is reversed and the cause is remanded.

Affirmed in part, reversed and remanded in part.

HOPF and LINDBERG, JJ., concur.