SENIOR HOUSING, INC., Plaintiff-Appellant, v. NAKAWATASE, RUTKOWSKI, WYNS & YI, INC., n/k/a Nakawatase, Wyns, & Associates, Inc., Defendants-Appellees.

First District (1st Division) No. 1—87—3571

Opinion filed October 30, 1989.—Rehearing denied January 22, 1990.

William J. O'Connor, of Zukowski, Rogers, Flood, McArdle & O'Connor, and Bogen, Rosenblum & Associates, both of Chicago (Ronald Rosenblum, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, James M. Hoey, and Peter E. Kanaris, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Senior Housing, Inc., appeals from the dismissal of counts I and II of its lawsuit against defendant, Nakawatase, Rutkowski, Wyns & Yi, Inc., an architectural and engineering firm. Count I alleged that Nakawatase had negligently performed its contractual duties to plaintiff, and count II alleged that Nakawatase had breached the contract between the parties. The trial court granted Nakawatase's motion to dismiss on the ground that plaintiff had failed to timely file its claim within two years of the date the cause of action accrued. On appeal, plaintiff contends that: (1) the statute of limitations had not expired prior to plaintiff's filing of its complaint and (2) Nakawatase is estopped by its conduct from asserting the statute of limitations as a defense to plaintiff's claim. For the following

reasons, we affirm in part, reverse in part and remand the cause for further proceedings.

The pleadings set forth the following. On December 21, 1981, plaintiff and Nakawatase entered into a contract (the Contract) for the development of a multi-unit residential building for the elderly, consisting of 59 one-bedroom units for the elderly and one two-bedroom living unit for the manager. The Contract stated that Nakawatase was to "develop all concept, schematic, design/development and construction documents for the project, normal submittals to DHUD and *** provide construction observation during the construction of the project." The Contract further provided:

> "1.4.9 The Architect shall be the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor, and shall render written decisions on all claims, disputes and other matters in question between the Owner and the Contractor."

In addition to other provisions specifying the responsibilities of the parties, the Contract stated:

> "8.2 As between the parties to this Agreement: as to all acts or failures to act by either party to this Agreement, any applicable statute of limitation shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the relevant Date of Substantial Completion of the Work, and as to any acts or failures to act occurring after the relevant Date of Substantial Completion, not later than the date of issuance of the final Certificate for Payment."

The parties agree that the housing center was substantially completed on September 1, 1983.

Sometime in early 1984, plaintiff notified Nakawatase and the contractor that there were certain moisture problems resulting in numerous water and air leaks at windows and heat/vent/air-conditioning units every time it rained or the wind blew. Nakawatase and the contractor conducted an on-site inspection of the building and in a letter to plaintiff dated July 6, 1984, Nakawatase advised plaintiff that the contractor had been "instructed to re-caulk the windows in accordance with the drawings so that the joint will be caulked above and below the flashing and adhered to the shelf angle. This has been completed in the 04 and 06 bays on all floors and is being watched to determine if this has corrected the problem before re-caulking the entire building. The Contractor has promised to repair the entire building once it is determined that this course of action will correct the problem."

Subsequently, in January 1985, plaintiff notified Nakawatase and the contractor that the recaulking had not worked and the windows were leaking. A meeting was then held in late January at which Nakawatase, plaintiff and the window subcontractor discussed the failure of the recaulking to prevent water and air infiltration at the windows. It was discovered that the caulking had covered necessary weep holes above the windows which facilitate the relief of water build-up behind the walls. The window subcontractor agreed to correct the problems. Air infiltration problems were also to be corrected. During spring 1985, the contractor obtained the services of a subcontractor to do remedial caulking and to install plastic tube weeps. In addition, a masonry subcontractor applied a water repellant to a section of the building. Subsequently, plaintiff asked Nakawatase to prepare bids for the application of a water repellant sealer to the entire building. Nakawatase submitted a list of contractors to plaintiff, and bids were sent out to five contractors. The bids were opened in April 1986. The record does not indicate whether this work was ever done. In mid-April 1986, when the leakage problems still persisted, plaintiff commissioned an independent masonry consultant to inspect the housing center and to determine the causes of water and wind penetration. The consultant advised plaintiff, *inter alia*:

"Detail 1, A—17 of the original drawings will not allow water drainage. The detail as shown seals the forward edge of the flashing shown in the sealant bead and no weep holes or wicks are shown. ***

***

It is my opinion that if the specified and detailed flashings are installed, then water is circumventing the flashings through punctures, dry laps, lack of end dams, etc. and entering apartment units particularly at window heads. If the remedial repairs stop water penetration problems, you may not wish to pursue this theory. If you wish to investigate further it will be necessary to open masonry walls for inspection purposes."

As a result of the consultant's report, plaintiff commissioned additional work to correct the problems, the cost for which totalled $11,120. On September 25, 1986, plaintiff demanded payment from Nakawatase and the contractor for the repair costs. When they asked for additional time to examine the report and the bills, plaintiff granted it to them. However, neither the contractor nor Nakawatase responded to plaintiff's demand. As a result, plaintiff filed its cause of action on March 17, 1987, against Nakawatase and the contractor.

Count I of the complaint alleges that Nakawatase had acted negligently, and count II alleges that Nakawatase breached the Contract. Counts III and IV alleged negligence and breach of contract, respectively, against the contractor. Count V alleges that the insurance company which issued a performance bond to the contractor is liable as surety for the contractor's performance of the Contract.

In response, Nakawatase filed a motion to dismiss on the grounds that the complaint was not filed within the applicable two-year limitation periods. Pursuant to paragraph 8.2 of the Contract, any cause of action accrued on the date of substantial completion, which the parties agreed was September 1, 1983. Thus, according to Nakawatase, the complaint should have been filed by September 1, 1985. Notwithstanding the contractual provision which established the accrual date, Nakawatase also argued that pursuant to section 21.3 of "An Act in regard to limitations" (Ill. Rev. Stat. 1981, ch. 83, par. 22.3), the applicable statute of limitations in effect at the time the Contract was executed, Nakawatase had to commence its action within two years from the time plaintiff knew or reasonably should have known of the act or omission. Nakawatase argued that the discovery date was sometime during or prior to July 1984 when Nakawatase had conducted the initial on-site inspection as the result of plaintiff's complaints of air and water leakage. The trial court granted Nakawatase's motion to dismiss and plaintiff appealed.

■ Prior to our discussion of the issues raised on appeal, we note that, although plaintiff's notice of appeal indicated that it was appealing from the trial court's dismissal of both count I and count II of its complaint, during oral argument, counsel for plaintiff expressly abandoned its argument as to count I (negligence) by informing this court and opposing counsel that it would not be proceeding on that count. Generally, an appeal will be considered as abandoned where the appellant fails to prosecute the appeal or does some act inconsistent with its prosecution. (See *McCottrell v. Benson* (1961), 32 Ill. App. 2d 367, 178 N.E.2d 144.) Accordingly, we find that plaintiff has abandoned count I on appeal. Therefore, the following discussion applies only to count II, which sounds in breach of contract.[1]

---

[1] As a further indication that plaintiff has abandoned count I (negligence) on appeal, in its reply brief, plaintiff failed to address Nakawatase's alternative argument that count I was barred by the economic loss doctrine. Specifically, Nakawatase argued that plaintiff's failure to allege other than economic damages in its negligence count bars recovery in tort. *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443; *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 524 N.E.2d 642.

The threshhold issue in the present case is whether Nakawatase is estopped by its actions from asserting the statute of limitations as a bar to the action. If Nakawatase is estopped, the issue as to whether the statute of limitations had expired prior to plaintiff's filing of its complaint is moot. Plaintiff argues that Nakawatase's conduct in both investigating the leakage and attempting to correct the problem by instructing the contractor as to what remedial steps to take estops Nakawatase from asserting the statute of limitations as a defense. In response, Nakawatase argues that plaintiff has waived the estoppel argument by failing to plead estoppel in the original complaint. Further, even if the estoppel argument is not waived, Nakawatase argues that its actions regarding the water leakage and wind penetration problems consisted of mere investigation which does not provide sufficient grounds for estoppel.

■ In our view, Nakawatase's waiver argument is unpersuasive. As support for its contention that plaintiff was required to plead estoppel in its complaint, Nakawatase relies on *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 524 N.E.2d 642, *Hartford Accident & Indemnity Co. v. D.F. Bast, Inc.* (1977), 56 Ill. App. 3d 960, 372 N.E.2d 829, and *Johnson v. Johnson* (1975), 26 Ill. App. 3d 64, 324 N.E.2d 450. None of these cases support Nakawatase's argument. Instead, the cases state that neither party can argue estoppel for the first time on appeal. That is not the situation in the present case. Plaintiff pled estoppel in its answer to Nakawatase's motion to dismiss. To require plaintiff to plead estoppel in the complaint before the statute of limitations has been raised is illogical. Once the defense was raised in the motion to dismiss, estoppel was argued. Thus, although it was not raised in the complaint, we find that it was properly raised in the pleadings below.

■ It is well established that to invoke the doctrine of equitable estoppel, it is not necessary to establish that the defendant intentionally misled or deceived the plaintiff, or even that the defendant intended to induce delay. The only requirements are that plaintiff reasonably relied on the defendant's conduct in forbearing suit (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869) and that plaintiff suffered a detriment as a result of his reliance upon the words or conduct of the defendant. *AXIA, Inc. v. I.C. Harbour Construction Co.* (1986), 150 Ill. App. 3d 645, 501 N.E.2d 1339.

In support of its position that Nakawatase's conduct acted to estop it from asserting the statute of limitations as a defense, plaintiff relies on *AXIA, Inc. v. I.C. Harbour Construction Co.* (1986), 150 Ill. App. 3d 645, 501 N.E.2d 1339. In *AXIA*, plaintiff contracted

with Harbour, a contractor, on June 10, 1977, for the construction of a three-story building. The contract provided that the contractor would correct any defects appearing within one year from the date of completion. The building was completed in fall 1978, and shortly thereafter, it began to leak extensively whenever it rained and efflorescence appeared on the outside bricks. Plaintiff notified Harbour, and Harbour attempted to correct the problems in 1979, 1980 and 1982, but the problems continued. Finally, in July 1983, plaintiff employed a consulting firm to investigate the problem. The firm's report indicated design and construction deficiencies. Harbour failed to do the corrective work, and 10 months later, plaintiff filed its complaint. The trial court dismissed the complaint as being time barred.

On appeal, the reviewing court held that, although plaintiff had not timely filed its complaint, Harbour's conduct was sufficient to establish an estoppel to prevent Harbour from shielding itself with the statute of limitations. In reaching its decision, the *AXIA* court noted that during the four-year period between the first leakage problems and the filing of the compliant, Harbour had inspected the premises, performed tests and performed corrective work in apparent recognition of its contractual responsibilities. Further, during the limitations period, Harbour never disputed its responsibility. The *AXIA* court concluded that plaintiff's reliance on Harbour's conduct had the natural effect of forebearing legal action.

Nakawatase attempts to distinguish *AXIA* from the present situation by claiming that its conduct consisted of mere investigation and it never admitted to any further responsibility. In addition, Nakawatase asserts that the contract plainly stated that it was not required to make exhaustive inspections, was not responsible for construction techniques and was not responsible for the failure of any party to perform its contractual obligations.

Contrary to Nakawatase's argument, the record indicates that it was responsible for and took responsibility to direct the repair work. In Nakawatase's letter to plaintiff, dated July 6, 1984, Nakawatase indicated that it had "instructed" the contractor to recaulk and would then "watch to determine if this has corrected the problem." Further, in Nakawatase's interoffice memo dated January 28, 1985, regarding a meeting on the water infiltration problems, Nakawatase indicated that it would notify the contractor so that corrective measures could be taken. In addition, in a letter from Nakawatase to the contractor, dated February 7, 1985, Nakawatase instructed the contractor as to what remedial steps to take and when.

Furthermore, paragraph 1.4.9 of the Contract between plaintiff

and Nakawatase states that Nakawatase is the interpretor of all contract documents and judge of performance by both the owner and the contractor and shall render written decisions on all disputes and endeavor to secure faithful performance. In addition, paragraph 1.4.3 of the Contract states that instructions to the contractor from the owner were to be forwarded through Nakawatase.

■ Accordingly, in our view, the facts indicate that Nakawatase did much more than merely investigate. Pursuant to the Contract, Nakawatase was the intermediary between plaintiff and the contractor, and, as did the defendant in *AXIA*, Nakawatase acted in "apparent acknowledgment of its responsibility under the contract." (*Axia*, 150 Ill. App. 3d at 656.) Moreover, there is no evidence in the record of any denial of responsibility by Nakawatase until September 1986, when plaintiff demanded restitution from Nakawatase and the contractor for repairs made by outside contractors upon the recommendation of the consultant. Thus, we find that it was reasonable for plaintiff to have refrained from filing its lawsuit in reliance on Nakawatase's representations that remedial measures would be taken, observed, and further corrected, if necessary. As a result of its reliance, plaintiff suffered the detriment of ongoing leakage problems and additional expenses with outside contractors. Our decision that Nakawatase is estopped by its actions from asserting the statute of limitations as a defense obviates the need to address the issue as to whether the statute of limitations had expired prior to plaintiff's filing of its complaint.

For the aforementioned reasons, we affirm that part of the trial court's judgment that dismissed count I (negligence), reverse that part of the judgment that dismissed count II (contract), and remand the cause for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.

MANNING, P.J., and O'CONNOR, J., concur.