NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff-Appellant, v. CROWN-TRYGG CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 87—1609

Opinion filed May 12, 1988.—Rehearing denied June 23, 1988.

Lord, Bissell & Brook, of Chicago (Richard F. Johnson, Hugh C. Griffin, and Diane L. Jennings, of counsel), for appellant.

Edward H. Nielsen, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

More than five years after the occurrence, the plaintiff, National Railroad Passenger Corporation (Amtrak), filed a complaint against the defendants, Crown-Trygg Corporation and Carl Standmeyer, Jr. (collectively, Crown-Trygg), for property damage arising out of a collision at a railroad crossing between an Amtrak train and a Crown-Trygg truck driven by Standmeyer. Crown-Trygg moved to dismiss the complaint on the ground that the applicable five-year statute of limitations had expired. In response, Amtrak argued that Crown-Trygg was estopped from asserting the statute of limitations as a defense. After an evidentiary hearing, the trial court granted Crown-Trygg's motion to dismiss. On appeal, we are asked to decide whether the trial court's decision is contrary to the manifest weight of the evidence.

The collision, which caused damage to both train and truck, oc-

curred on November 19, 1975. Approximately 40 passengers on the train filed personal injury suits against Amtrak and Crown-Trygg. Amtrak retained the firm of Lord, Bissell & Brook to represent them in the lawsuit. Commercial Union Insurance Company, as the insurance carrier for Crown-Trygg, retained Pretzel, Stouffer, Nolan & Rooney to represent Crown-Trygg.

Sometime after the November 19, 1975, accident, attorneys from Lord, Bissell & Brook and Pretzel & Stouffer orally agreed that, as a matter of trial strategy, they should join together in defending the personal injury cases. Both law firms recognized that a fight over whether the Amtrak train or the Crown-Trygg truck was liable for the accident would only be used to enhance the value of the passenger personal injury claims. Accordingly, both sides agreed to present a united front by disposing the passenger claims on a 50/50 nonrecourse basis and then to fight it out between themselves after the personal injury suits were settled. This agreement is central to the estoppel issue.

Attorneys from Lord, Bissell & Brook and Pretzel & Stouffer testified at the evidentiary hearing. Walton Smith, a partner with Lord, Bissell & Brook, testified that he was assigned to handle the Amtrak file in March of 1978. At that time, Smith was told that within a few days after the November 19, 1975, accident, Amtrak and Crown-Trygg agreed to cooperate in disposing the passenger claims by presenting a united front. In a letter dated November 24, 1975, an attorney from Lord, Bissell & Brook, assigned to the case at the time, confirmed the oral agreement that the passenger claims would be paid out on a 50/50 basis and noted the mutual intention of both firms to handle the claims in the most economically sound manner.

After Smith became involved in the case in 1978, the agreement was changed to split the passenger claims on a nonrecourse basis, which meant that both Amtrak and Crown-Trygg were barred from later seeking indemnification for money paid out on the personal injury claims. On November 1, 1978, Smith sent a letter to Timothy Gillick, the partner who was handling the case for Pretzel & Stouffer at that time, setting forth this understanding. The letter further stated that "[t]he claims of the various parties for their own property damage may be the subject of claims or litigation without respect to this agreement."

Subsequently, on November 9, 1978, a draft agreement was tendered to Amtrak. The draft, signed only by Commercial Union Insurance Company, Crown-Trygg's insurance carrier, was intended to codify the nonrecourse agreement with respect to the personal injury

claims. The draft stated:

> "This agreement shall not be utilized by any of the parties hereto in support of an assertion of an estoppel with respect to any further lawsuit among the Parties for property damage sustained by the Railroad Parties or the Truck Parties in connection with their vehicles and equipment."

Smith further testified that his understanding that any litigation for property damage would be deferred until the personal injury claims were resolved was reinforced by Pretzel & Stouffer attorney Gillick during their frequent meetings in the courthouse for pretrial conferences. Smith recalled Gillick saying that the parties could not afford to let the passenger plaintiffs divide them, that they should settle all cases on a 50/50 basis, and put off any litigation between Crown-Trygg and Amtrak until all the passenger cases were resolved. Smith also recalled Gillick telling the pretrial judge that the defendants agreed to split the settlement of the personal injury cases and also agreed not to bring any actions against each other so as not to assist the plaintiffs.

Smith testified that this same understanding was further reflected in the stipulations made of record when Amtrak and Crown-Trygg employees were deposed in the passenger cases. Prior to the taking of a number of these depositions, counsel for Crown-Trygg placed of record a stipulation that neither Amtrak nor Crown-Trygg would ask any questions of the witness being deposed. Each stipulation was predicated on an agreement that the witness would be made available for a deposition at a later date when the plaintiffs were not participating.

In June of 1983, a few years after the statute of limitations had run, one personal injury case which could not be settled was proceeding toward trial. Smith discovered that Crown-Trygg retained an expert on matters that would involve the comparative liability between the Amtrak train and the Crown-Trygg truck. Realizing that there would be a fight over the liability between the two parties, which was in direct contradiction of their agreement, Smith wrote a letter to Pretzel & Stouffer reminding them of the agreement to defer any resolution of liability until all personal injury claims were resolved. The letter stated, among other things:

> "[N]o counterclaims have been filed in this case and liability discovery has been deferred. *** It goes without saying that liability issues which may be litigated in the context of this trial may present questions of collateral estoppel in any subsequent liability litigation between our clients. Such a determination of liability in the context of this case, therefore, would violate the

intent and terms of our clients' agreement to defer resolving ultimate liability for this truck-train collision."

In response to that letter, Pretzel & Stouffer orally agreed to admit liability in that pending passenger case.

Smith finally testified that in reliance on the conversations, letters, and deposition stipulations regarding the deferral of the property damage claim until the resolution of the personal injury claims, he did not file the instant suit before the running of the statute of limitations. Despite the fact that one passenger claim remained to be resolved, the instant suit was filed on May 13, 1985, when Smith realized for the first time that Pretzel & Stouffer attorney Edward Nielsen, who took primary control over the case after attorney Gillick died in 1984, did not believe Crown-Trygg had waived its statute of limitations defense. When the suit was filed, Crown-Trygg asserted the statute of limitations as a defense.

On cross-examination, Smith stated that there were no written documents whereby Crown-Trygg agreed to waive the statute of limitations and that no one from Pretzel & Stouffer ever specifically said that Crown-Trygg would waive the statute of limitations.

Marsha Klevickis, an associate from Lord, Bissell & Brook, testified that she assisted Smith with the Amtrak case by attending the deposition of the Crown-Trygg truck driver, Carl Standmeyer, in March of 1979. Klevickis testified that prior to the deposition, Pretzel & Stouffer attorney Nielsen spoke to her about the agreement with Smith whereby the parties were not going to argue liability until the conclusion of the personal injury cases. Nielsen then stipulated that neither party would ask any questions on the understanding that Standmeyer would be submitted "for later deposition after the other personal injuries have been resolved."

The only witness for Crown-Trygg was Edward Nielsen, a partner with Pretzel & Stouffer, who testified that he became involved with the case a few days after the accident but that partner Gillick was primarily responsible for the file until his death in 1984. In regard to his understanding of the agreement with Lord, Bissell & Brook, Nielsen stated:

"[W]e felt that the best approach we could take, and I can't tell you exactly when this took place from an evolutionary standpoint, but our feeling was the best defense we could develop would be to attempt quickly to settle the cases in a joint effort to settle them and then to basically fight it out between ourselves at a later date if necessary as to who was responsible *** ."

Essentially, Nielsen agreed with Smith's recollection of events but did not agree with Smith's conclusion that there was an understanding that the statute of limitations would be waived. Because Nielsen expected Amtrak to file suit before the running of the statute of limitations, he checked various courts to see if such a suit had been filed. Nielsen stated that he was unaware of any document or conversation in which the statute of limitations was discussed or in which anyone from Crown-Trygg or Pretzel & Stouffer agreed to waive the statute of limitations. It was his understanding that any agreement between Amtrak and Crown-Trygg related only to settling the personal injury claims, not the property damage claim.

On cross-examination, Nielsen testified that "fighting it out at a later date" meant fighting it out after the personal injury cases were done. He further testified that the only suit which could be filed after the personal injury cases were settled was one for property damage because the personal injury cases were handled on a nonrecourse basis.

■ For estoppel to arise, a party must engage in conduct which reasonably causes another to change his position by lulling him into a false sense of security. (*Board of Directors v. Western National Bank* (1985), 139 Ill. App. 3d 542, 549, 487 N.E.2d 974, 979.) The principle of estoppel has been employed to bar inequitable reliance on a statute of limitations where the plaintiff reasonably relied on the defendant's conduct in forbearing suit. *Witherell v. Weimer* (1987), 118 Ill. 2d 321, 515 N.E.2d 68; *AXIA, Inc. v. I. C. Harbour Construction Co.* (1986), 150 Ill. App. 3d 645, 501 N.E.2d 1339; *Cassidy v. Luburich* (1977), 49 Ill. App. 3d 596, 364 N.E.2d 315.

■ The facts in the instant case lead us to conclude that the conduct of Pretzel & Stouffer on behalf of Crown-Trygg and the reliance by Lord, Bissell & Brook on behalf of Amtrak estops Crown-Trygg from asserting the statute of limitations defense. The undisputed evidence shows that Amtrak and Crown-Trygg agreed to cooperate in disposing the passenger claims by presenting a united front, agreed to pay passenger claims on a 50/50 nonrecourse basis, and agreed to postpone any fight between themselves until all the passenger claims were resolved. That understanding of the agreement was repeatedly reinforced through letters, oral communications, and stipulations both before and after the expiration of the five-year statute of limitations.

Although Crown-Trygg admits that it agreed to fight it out with Amtrak after the personal injury cases were settled, it maintains that it never agreed to waive the statute of limitations. Crown-Trygg cor-

rectly points out that there were no documents or conversations between the parties concerning the waiver of the statute of limitations. However, the fact that Crown-Trygg never intended to waive the statute of limitations is irrelevant. While parties to a litigation may knowingly and intentionally agree to waive a limitations defense, the doctrine of estoppel does not require proof of any such agreement, nor does it require that the defendant intended to relinquish its limitations defense. *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223.

Under an estoppel theory, the focus is on the defendant's conduct which induced the plaintiff to forbear legal action, not on what the defendant subjectively believed. The facts indicate that Amtrak's attorneys reasonably relied on the conduct of Crown-Trygg's attorneys who, for over a period of eight years and even after the statute of limitations had run, continually adhered to and reinforced the understanding that the parties would defer fighting it out between themselves until all the passenger claims against them had been resolved. It was reasonable for Amtrak's attorneys to understand that "fighting it out at a later date" meant to defer any litigation concerning property damage. It was reasonable for Amtrak's attorneys to believe that the nonrecourse sharing agreement pertaining to the personal injury cases would not later bar or estop either Amtrak or Crown-Trygg from seeking 100% of their property damage. Finally, it was reasonable for Amtrak's attorneys to assume that Crown-Trygg would not assert the statute of limitations as a defense to their property damage claim.

For the foregoing reasons we find that the trial court's decision granting Crown-Trygg's motion to dismiss was contrary to the manifest weight of the evidence. Crown-Trygg's course of conduct lulled Amtrak into a false sense of security which caused them to delay filing their claim for property damage until after the usual limitations period. Accordingly, the judgment of the trial court is reversed and remanded.

Reversed and remanded.

JOHNSON and McMORROW, JJ., concur.