2019 IL App (2d) 190186-U
No. 2-19-0186
Order filed December 4, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF BIG ROCK, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-L-435 |
| | ) | |
| H. LINDEN & SONS SEWER AND WATER, | ) | |
| INC., NORTH AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY, and APPLIED | ) | |
| TECHNOLOGIES, INC., | ) | Honorable |
| | ) | James R. Murphy, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err in dismissing as untimely the Village's complaint for breach of several construction-related contracts because (1) equitable estoppel did not apply; (2) there was no basis to equitably toll the limitations period; and (3) the Village forfeited its argument that the discovery rule tolled the limitations period. Therefore, we affirmed.

¶ 2   Plaintiff, the Village of Big Rock (the Village), appeals from the circuit court's dismissal

of its breach of contract complaint against defendants pursuant to section 2-619(a)(5) of the Code

of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2018)), wherein it alleged the improper

construction of a sanitary sewer system on behalf of the Village and its residents. On appeal, the Village contends that the circuit court erred in concluding that its complaint was untimely under the four-year statute of limitations for faulty construction-related claims set forth in section 13-214 of the Code (735 ILCS 5/13-214 (West 2018)) because (1) there are facts demonstrating that estoppel applies to bar H. Linden & Sons Sewer and Water, Inc. (Linden) from invoking the statute of limitations as a defense; (2) the statute of limitations was equitably tolled until Linden ceased repairs and plaintiff terminated the contract with Linden; and (3) the discovery rule applies to certain of the Village's claims against Applied Technologies, Inc. (ATI). We affirm.

¶ 3                                  I. BACKGROUND

¶ 4      The Village filed a three-count breach of contract complaint on August 14, 2018, against defendants stemming from the construction of a sanitary sewer system that experienced widespread failures on April 18, 2013—less than one year after construction was completed. For the purposes of this appeal, we accept as true all the well-pleaded facts in the Village's complaint and draw all reasonable inferences in its favor. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). The Village alleged that it entered into various agreements with defendant ATI to design, engineer, and supervise the construction of a sanitary sewer system and water reclamation facility (WRF) in the central part of the Village (Design Agreement and Observation Agreement, respectively), as well as to perform bidding services support for obtaining contractors for the project (Bidding Agreement). Under the Design Agreement, ATI prepared preliminary and final designs for the sanitary sewer system, which was designed to collect and transport wastewater from some 189 individual properties to the WRF for treatment. It was intended to be a watertight system, meaning no stormwater or groundwater would enter it. The system consisted of separate Septic Tank Effluent Pumps (STEP system)

located on each property that would discharge wastewater to pressurized sewers located in the Village's right-of-ways, which in turn would discharge the wastewater to the WRF. The portion of the STEP system located on each individual property included a septic tank, a pump or pumps, valves and piping, and controls and wiring. Each septic tank was to be attached with epoxy to a 12-inch riser and a 24-inch riser, with each riser extending from the septic tank up to the ground surface. Each septic tank also contained a sanitary sewer line and an electrical line running from the house or other structure to the tank, as well as an outflow pipe which conveyed wastewater to the pressurized sewer system. Under the Bidding Agreement, ATI was to provide bidding service support to the Village relative to the project. Specifically, ATI published and obtained bids for the construction of the sanitary sewer system, evaluated said bids, and prepared recommendations to the Village on the selection of a construction contractor. Finally, under the Observation Agreement, ATI agreed to provide construction-related services to the Village, including making periodic visits to the project site to observe the progress and quality of the work, as well as providing training and other related services.

¶ 5    The Village selected defendant Linden to serve as general contractor for the project. It entered into two construction contracts with Linden, namely "Contract A—WRF" (Contract A) and "Contract B—Sanitary Sewer System" (Contract B). Contract A provided generally that Linden would construct a WRF in accordance with the plans provided by the Village. The WRF was designed to treat the wastewater that was collected from different locations and release the treated water into Big Rock Creek. The Village raised no issue in its complaint relative to this contract. Contract B provided generally that Linden would construct a sewer system in accordance with the plans and specifications provided by the Village; here, the plans prepared by ATI. This contract also provided that if any work was found to be defective within one year after the date of

substantial completion, Linden would promptly repair the defective work without cost to the Village. Pursuant to both contracts, Linden furnished performance bonds equal to the contract price as security for Linden's obligations under the contracts. Said performance bonds were issued through defendant North American Specialty Insurance Company (North American).

¶ 6    Linden commenced installation of the septic tanks on the various properties within the Village in January 2012, and it completed all work on the sanitary sewer system contemplated in Contract B in April 2012. Neither Linden nor ATI ever notified the Village of any design or construction defect during or after construction of the sanitary sewer system.

¶ 7    After construction was completed but within the one-year guarantee period, the Village discovered widespread failures to the sanitary sewer system during a major rain event on April 18, 2013. Specifically, groundwater had entered numerous septic tanks on properties comprising the sanitary sewer system, causing numerous septic tank alarms to ring and alert the property owners and the Village. The Village immediately notified Linden and ATI.

¶ 8    On either April 18 or 19, 2013, Linden and ATI both dispatched representatives to the Village to personally observe the failures to the sanitary sewer system. These defects were "open and obvious to observe and *** contrary to the design and construction of the Sanitary Sewer System as a water-tight system." That same day or sometime soon thereafter, with Village and ATI representatives present, Linden dug up at least one septic tank for inspection. Linden reached an initial conclusion that the failures were caused by defective epoxy that was used to secure the 12 and 24-inch risers to the septic tanks. Linden believed that the epoxy, manufactured and supplied by Orenco Systems, Inc. (Orenco), had not properly hardened. However, Linden did not perform any testing of the epoxy or further investigate any other aspect of the sanitary sewer system, and it thereafter denied responsibility for the sanitary sewer system failures. The Village

sent a written warranty demand to Linden on April 20, 2013, detailing the nature of the system failures and advising that the failures constituted warranty issues that Linden was responsible for remedying. Linden did not respond to the warranty demand, and the Village sent another letter on May 16, 2013, concerning the system failures and Linden's failure to respond. ATI and North American were copied on the correspondence.

¶ 9    At the request of the Village, Orenco inspected several septic tanks in late summer 2013. Based on its preliminary inspection, Orenco opined that Linden had improperly applied the epoxy to the risers resulting in a non-watertight seal. It also questioned whether (1) Linden had allowed sufficient time for the epoxy to cure before backfilling the septic tanks and risers; (2) Linden applied the epoxy when the air temperature was too cold; and (3) ATI had properly designed the sanitary sewer system and supervised its construction.

¶ 10    Following Orenco's findings, the Village sent a letter to Linden on October 21, 2013, declaring it in default under Contract B and threatening to terminate the contract if it did not take corrective action within seven days. The stated bases for default were Linden's failure to communicate with the Village, investigate the cause of the failures, and correct the defects. The Village attached a copy of the letter to the complaint. Following the declaration of default, Linden eventually repaired the 24-inch tank risers[1] on the affected properties by applying additional epoxy

---

[1] The complaint did not state when Linden repaired the 24-inch risers. The Village stated in its response to Linden and North American's joint motion to dismiss that the repairs were made in "late Fall 2015." In its appellate brief, the Village asserts that Linden repaired the 24-inch risers "[i]n Year 2014 (and possibly into Year 2015)."

to the area where the risers met the tanks. However, Linden refused to similarly repair the 12-inch tank risers, and the Village ultimately hired Orenco to perform the repairs.

¶ 11    The Village also sent a letter to ATI on October 25, 2013, wherein it "put ATI on notice that ATI is in default under its contracts with the Village by failing to adequately design this wastewater treatment system and by failing to adequately supervise the installation of this system by Linden, among other defaults." The Village referenced that it experienced widespread failures to the sanitary sewer system in April 2013, as well as summarized Orenco's findings that Linden had improperly applied the epoxy resulting in a non-watertight seal. The letter stated that "at least some responsibility for such flaws lies with ATI in failing to properly supervise the tank installation," and it requested that ATI forward the letter to its insurance carrier for a determination of coverage.

¶ 12    Over the course of the next several years, and after the expiration of the one-year guarantee period, the Village discovered additional defects allegedly caused by Linden's poor workmanship and ATI's inadequate engineering and construction supervision. For example, in Fall 2013, a service riser in the public right-of-way broke, necessitating emergency repairs by the Village. During repairs, the Village discovered that the service riser was set on top of the shut-off value rather than secured by a "mousehole" or similar technique to prevent the riser from dislodging. From 2014 to 2016, at least five other service risers that were similarly installed broke off from shutoff valves, necessitating additional emergency repairs. The Village alleged, upon information and belief, that all 180 service risers were attached in this defective manner.

¶ 13    The Village also alleged, based on Orenco's investigation, that it discovered in 2016 that the electrical boxes and conduit installed by Linden within the septic tanks were not properly sealed in accordance with standards established by the National Electric Code, causing the

electrical boxes to fill with water and effluent and posing a threat to the proper functioning of the sanitary sewer system. Linden likewise did not accept responsibility for the defects and refused to make the necessary repairs. The Village asserted that the defects related to the service risers, electrical boxes, and conduit were not readily observable by the Village because they were located underground.

¶ 14    The Village also alleged that certain risers were not cut evenly, thereby making it difficult to securely attach the riser lids, thus allowing stormwater to enter the system. Similarly, it alleged that Linden defectively attached the riser lids, which also allowed stormwater to enter. The Village was unable to determine whether these defects were caused by faulty design, faulty workmanship, or faulty construction supervision, but it notified defendants upon its discovery of each latent defect.[2]

¶ 15    Representative from the Village and Linden met in person and communicated in writing numerous times from April 2013 to 2016 regarding the system defects. According to the complaint, the Village and Linden negotiated throughout most of 2016 on the scope and cost of additional repairs, and they discussed the possibility of Linden making a lump sum payment to the Village to cover the cost of the repairs. Negotiations between the Village and Linden over the scope of additional repairs and/or compensation to Linden eventually broke down.

¶ 16    On October 18, 2016, the Village sent a letter to Linden and North American terminating Contract B and requesting damages due to Linden's "failure to cure its numerous defaults under [Contract B] after notice [of the default] from the Village." The Village also reiterated its demand

---

[2] Neither the complaint nor the Village's brief state when the Village discovered the alleged defects to the unevenly cut risers and defectively attached riser lids.

for payment from North American of the performance bond monies held by it due to Linden's default. The Village attached a document entitled "[i]temization of Village of Big Rock Expenses for Repairs/Inspections," which listed expenses the Village either had incurred or would incur to inspect and repair the sanitary sewer system. The itemization totaled $459,180.07. A few days earlier, on October 14, 2016, the Village sent a demand for payment to ATI for $308,000 to cover the estimated cost to proactively repair the remaining risers that were alleged to be improperly attached to the shutoff valves due to ATI's design failures. It likewise demanded that ATI return payment to the Village for its construction supervision services. The Village's letter purported to require a response within 30 days and a finalization of the Village's claims for damages within 21 days thereafter. It is unclear from the record whether ATI replied to either the October 25, 2013, or the October 14, 2016, letters.

¶ 17    The Village filed its three-count complaint on August 14, 2018. Count I alleged breach of contract against Linden due to its improper construction and installation of the sanitary sewer system. Count II sought enforcement of the performance bonds posted by North American. Finally, count III alleged breach of contract against ATI due to its failures in designing the sanitary system and its failure to properly supervise Linden's work on the project, particularly as to the application of epoxy, installation of electrical boxes and conduit, and securing of riser lids.

¶ 18    Linden and North American filed a joint motion to dismiss pursuant to section 2-619(a)(5) of the Code on October 15, 2018. They argued that dismissal of the counts against them was warranted because the complaint was filed after the expiration of the limitations period for construction-related claims in section 13-214(a) of the Code. They asserted that the limitations period began to run when the Village discovered the widespread system failures on April 18, 2013, or, at the absolute latest, on October 21, 2013—when the Village sent a letter to Linden declaring

Linden in default under Contract B, threatening to terminate the contract if Linden did not take corrective action within seven days, and demanding that Linden and North American compensate it for damages sustained as a result of the alleged breach. ATI likewise moved to dismiss pursuant to section 2-619(a)(5) based upon the same limitations period. Specifically, it argued that the statute of limitations began to run, at the latest, on October 25, 2013—when the Village sent it a letter detailing the defects of the sewer system and declaring ATI to be in contractual breach for its failures concerning the design, planning, and construction oversight of the project.

¶ 19 In response to the joint motion filed by Linden and North American, the Village argued that the limitations period did not begin to run until October 18, 2016, after Linden ceased making repairs to the sanitary sewer system and the Village issued its letter terminating the contracts. In the alternative, the Village argued that Linden and North American should be estopped from asserting the statute of limitations as a defense because Linden made repairs to the sewer system "in late Fall 2015" and negotiated with the Village concerning the repairs and settlement of the dispute throughout much of 2016. The Village also asserted that it continued negotiations with North American until December 5, 2017, when North American ultimately decided not to settle with the Village.

¶ 20 In response to ATI's motion, the Village argued that the discovery rule tolled the limitations period because the exact nature, cause, and party responsible for the defective work were unknown to the Village when the leaks first occurred in April 2013, and the Village was unable to determine causation until 2016. Second, the Village argued that it justifiably relied on the ongoing negotiations with and repairs undertaken by Linden such that the statute of limitations did not apply due to principles of estoppel. The Village appended to its response the affidavit of

Dean Hummell, Village President for the Village.[3] He averred that when the Village sent the initial default letters to defendants in October 2013, neither he nor the Village had specific knowledge as to whether the leaks discovered in April 2013 were caused by faulty design or inadequate construction supervision of Linden by ATI, and it did not have the financial resources to retain an independent engineer to investigate the cause. Both Linden and ATI refused to perform any significant follow-up investigation to determine the cause of the leaks after the Village sent its letters of default. Thereafter, the known sanitary sewer system problems persisted, and new defects were experienced, such as when service risers broke off from the main sewer line in Fall 2013 and in 2014 through 2016. The Village was not able to determine if the problem was a design defect or a construction defect. The Village asked Orenco to determine the cause of the various problems, but Orenco did not ultimately allocate blame between ATI and Linden, although it did opine that the leaking risers were caused by Linden's improper application of epoxy and it "otherwise attributed problems to the wastewater system to Linden." By Fall 2016, the Village had enough knowledge through its own discovery of defects to issue final default and termination letters to defendants. The affidavit concluded that the Village did not file suit earlier because (1) it was unable to determine who was at fault; (2) the defective work was underground; (3) Linden was cooperating to assess the defects and make repairs; and (4) the Village was waiting for a conclusion to said assessments and repairs. Hummell stated that he did not feel comfortable having the Village bring suit until it had a clearer understanding of the extent of the defects and could plead specific facts of default.

_____

[3] The Village did not similarly attach the affidavit to its response to Linden's motion.

¶ 21    The circuit court granted both motions to dismiss in a written ruling on February 15, 2019. The circuit court first noted that the motions both raised the four-year statute of limitations for construction-related claims. See 735 ILCS 5/13-214 (West 2018). Relying on *Knox College v. Celotex Corp.*, 88 Ill. 2d 407 (1981), it concluded that the Village knew or reasonably should have known that it was injured and that the injury was wrongfully caused no later than October 21, 2013—the date on which it sent a notice to Linden declaring it in default under the contract, demanding identification of all system failures and repairs to correct said failures, and threatening termination of the contract and litigation. The court also noted that, as evidenced by the October 18, 2016, termination letter, the Village confirmed that Linden had refused to inspect and repair its work, save for limited repairs of the 24-inch risers, and that Linden had not communicated with the Village since Fall 2015. It noted that the termination letter was sent "well within the 4-year statute of limitation for construction-related claims, and about one year before the statute would [expire]." Finally, relying on our supreme court's decision in *Vaughn v. Speaker*, 126 Ill. 2d 150 (1989), the circuit court concluded that the Village did not establish a basis to estop defendants from raising a statute of limitations defense because the complaint did not allege (1) that any defendant misrepresented or concealed any material fact; (2) that any defendant knew of the falsity of any representation; or (3) reasonable reliance by the Village on a misrepresentation by any defendant. The Village timely appealed.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, the Village contends that the circuit court erred in concluding that its complaint was untimely under the four-year statute of limitations for faulty construction-related claims set forth section in 13-214 of the Code (735 ILCS 5/13-214 (West 2018)) because (1) there are facts demonstrating that estoppel applies to bar Linden from invoking the statute of limitations as a

defense; (2) the statute of limitations was equitably tolled until Linden ceased making repairs and the Village terminated the contract with Linden; and (3) the discovery rule applies to certain claims against ATI.

¶ 24    A motion for involuntary dismissal pursuant to section 2-619(a) of the Code affords a defendant a means of obtaining summary disposition where the plaintiff's claim can be defeated either as a matter of law or on the basis of easily proved issues of fact. *Pinilla v. Harza Engineering Co.*, 324 Ill. App. 3d 804, 806 (2001). Such a motion admits both the truth of the facts alleged in support of the claim and the legal sufficiency of the claim, but it also raises affirmative matters which it asserts defeat the claim. As to those affirmative matters, there is no admission of either truth or sufficiency. *Barber-Colman Co. v. A & K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1075 (1992). A motion under section 2-619(a)(5) permits dismissal of a claim where the action was not commenced within the time limited by law. 735 ILCS 5/2-619(a)(5) (West 2018). When ruling on a section 2-619 motion to dismiss, the trial court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party. *Wackrow v. Niemi*, 231 Ill. 2d 418, 422 (2008). It is well established that we review *de novo* a section 2-619 dismissal. *M & S Industrial Co, Inc. v. Allahverdi*, 2018 IL App (1st) 172028, ¶ 15. Likewise, "[t]he applicability of a statute of limitations to a cause of action presents a legal question we review *de novo*." *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466 (2008).

¶ 25    The Village's primary argument on appeal is that Linden's conduct in repairing the 24-inch risers, taking steps toward repairing the 12-inch risers, and negotiating with the Village until October 2016 estops it from asserting the statute of limitations as a bar to the complaint.[4]

_____

    [4] As noted in the joint brief filed by Linden and North American, the Village does not argue

According to the Village, Linden's repair of the 24-inch risers demonstrates that it "implicitly or expressly accepted responsibility of the defects." The Village notes that although Linden ultimately did not repair the 12-inch risers, Linden had agreed to repair some of them and had ordered a probe grouter and other supplies necessary for the repair in 2014 and 2015. Pertaining to the ongoing negotiations, the Village highlights that it attached to its responses to the motions to dismiss correspondence between the parties' attorneys from 2013, 2014, and 2015 regarding the nature and scope of the repairs. According to the Village, the correspondence confirms that the parties engaged in discussions to resolve the defects, that Linden undertook repairs in 2014 and 2015 and contemplated additional repairs, notwithstanding Linden's denials of liability and "the blustery talk of attorneys" and their "chest puffing." As such, the Village contends that it justifiably delayed filing suit based on Linden's partial repairs, its promise of future repairs, and the settlement negotiations.

¶ 26     As a threshold matter, we must comment on the standard by which a plaintiff may invoke the doctrine of equitable estoppel against a statute of limitations defense. As noted by Linden, the circuit court rejected the Village's equitable estoppel argument because the complaint and its attachments did not allege facts to satisfy the six requirements of equitable estoppel set forth in *Vaughn v. Speaker*, 126 Ill. 2d 150 (1988). There, our supreme court listed the six elements of equitable estoppel as follows: (1) a misrepresentation or concealment of material facts by the party to be estopped; (2) knowledge by the party to be estopped that the representations were untrue at the time the representations were made; (3) the party claiming estoppel did not know the representations were untrue when they were made and at the time they were acted upon; (4) a

---

that North American's conduct should estop it from asserting a statute of limitations defense.

reasonable expectation by the party estopped that their conduct or representations would be acted upon: (5) good faith reliance on the misrepresentation by the party asserting estoppel; and (6) prejudice to the party asserting estoppel if the other party is permitted to deny the truth of its representations. *Vaugh*, 126 Ill. 2d at 162.

¶ 27 The Village asserts that *Vaughn* has had mixed application since it was decided and contends that no construction-related case in Illinois involving the applicability of equitable estoppel to a statute of limitations defense has applied *Vaughn*. The Village asks that we reject the application of the *Vaughn* elements as they relate to this case and instead apply the less arduous standards for equitable estoppel set forth in cases such as *Axia Inc. v. Harbour Construction Co.*, 150 Ill. App. 3d 645 (1986), and *Senior Housing, Inc. v. Nakawatase, Rutkowski Wyns & Yi, Inc.*, 192 Ill. App. 3d 766 (1989). Indeed, the bulk of the Village's argument section in its opening brief is devoted to this purpose. The Village also draws our attention to *Jackson Jordan Inc. v. Leydig, Voit & Mayer*, wherein our supreme court, without mentioning *Vaughn* or its six elements, stated that " '[i]t is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intended by its conduct to induce delay. [Citations.] Rather, all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit.' " *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 252 (1994) (quoting *Witherell, v. Weimer*, 85 Ill. 2d 146, 159 (1981)).

¶ 28 We need not address the apparent tension between these cases because the Village's argument fails even the seemingly less exacting standards for equitable estoppel noted in *Jackson Jordan, Inc.* and *Axia, Inc*. Accordingly, we will analyze the Village's argument under that framework.

¶ 29 As this court has observed, "the general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the damage of the other party." *Axia*, 150 Ill. App. 3d 645, 652 (1986). Estoppel is appropriate only if the party seeking to invoke it suffered a detriment as a result of its actual reliance on the words or conduct of the party to be estopped. *Id*. When a defendant raises a statute of limitations defense in a motion to dismiss, "it is incumbent upon the plaintiff to show sufficient facts to avoid the statute of limitations," and "the essential question presented is whether plaintiff demonstrated that the words or actions of the defendants induced plaintiff to reasonably rely to its detriment by failing to timely file this lawsuit." *Id*. at 653.

¶ 30 Based on the totality of the facts alleged in the Village's complaint, the attached correspondence, and its response to the joint motion to dismiss filed by Linden and North American, we conclude that Linden's conduct did not induce the Village to reasonably rely to its detriment in forbearing suit during the limitations period and, accordingly, Linden and North American are not equitably estopped from raising a statute of limitations defense. The complaint makes clear that the Village first discovered the "widespread failures" to the sanitary sewer system on April 18, 2013. These failures included "multiple groundwater leaks into the septic tanks," and the leaks were "open and obvious to observe" and "contrary to the design and construction" of the system. Linden inspected at least one tank and opined that the epoxy supplied by Orenco was defective, but it refused to either test the epoxy or investigate any other aspect of the sanitary sewer system to determine the cause of the leaks. By October 21, 2013, as evidenced by the letter of default, the Village had concluded both that Linden had refused to identify or repair these failures and that the failures "constitute[d] warranty issues" that Linden was contractually required to

remedy. The Village also detailed numerous unsuccessful attempts to contact Linden regarding its demand that it "identify the system failures and make all required repairs." The Village interpreted Linden's silence as "abandonment of its obligations under the contract." Although it eventually participated in meetings convened by the Village, Linden nevertheless "failed to accept any responsibility for the system failures and failed to acknowledge [its] obligations under the contract." Instead, Linden "passed blame onto Orenco and *** passed all responsibility for investigating the problem, determining a solution, and implementing the solution to the Village and Orenco." The Village understood Linden's conduct to "constitute a default under its contracts with the Village," and it threatened to terminate the contracts and "proceed appropriately" if Linden did not take corrective action within seven days.

¶ 31     Among the correspondence attached to the Village's reply was a letter it sent Linden nearly two years later, on July 7, 2015. Therein, the Village self-described the correspondence as a "final demand" letter that was "necessitated by [Linden's] continued denials of responsibility *** and the significant delays in completion since these items were first raised." The letter stated that "Linden must commence work to repair every 12-inch riser, repair the sealing for every electrical fixture in all tanks,[5] and complete all other punch list items within 14 days," otherwise the Village would terminate the contract and take appropriate action.

---

[5] The Village's July 7, 2015, correspondence references "faulty electrical sealing" in the septic tanks and states that "[i]t was only when [the] tanks and risers were uncovered to repair other faulty work that this latent defect was discovered." Accordingly, this correspondence appears to conflict with the Village's assertion in its complaint that this defect was discovered in 2016.

¶ 32    Finally, in October 2016, the Village sent a letter to Linden and North American formally terminating Contract B and demanding damages due to Linden's "failure to cure its numerous defaults under [Contract B] after notice [of the default] from the Village." The Village stated that although Linden negotiated with the Village regarding repairs and had repaired the 24-inch risers, it refused to repair the 12-inch risers, "failed to adequately investigate and address many of the other problems with the [system][,] and failed to communicate with the Village since approximately Fall 2015." The Village reiterated its demand for payment from North American of the performance bond monies held by it due to Linden's default.

¶ 33    Against this backdrop of correspondence documenting Linden's refusal to either inspect or repair the claimed defects, save for the repairs to the 24-inch risers, it would strain credulity to conclude that the Village reasonably relied on Linden's conduct or representations in forbearing suit until August 2018—more than five years after its discovery of the widespread system failures. The complaint and the above-referenced correspondence establish that, although Linden repaired the 24-inch risers sometime in 2014 and "possibly" 2015, Linden refused to similarly repair all the 12-inch tank risers and likewise refused to repair the service tank risers, the defective electrical boxes, the defectively cut risers, and the defectively attached riser lids, and refused to install seals around the riser lids.

¶ 34    The cases relied on by the Village offer it no assistance. In *Axia*, the plaintiff hired the defendant contractor to construct an office building. *Axia*, 150 Ill. App. 3d at 648. The contract required the contractor to remedy any defect in the building that appeared within one year of completion. Shortly after construction was completed, the plaintiff notified the contractor that the building leaked extensively whenever it rained. *Id.* at 648. The contractor inspected the premises, conducted tests, and performed corrective work on the building over a four-year period. After

those efforts failed to remedy the problem, both parties hired experts to examine the building and submitted bids for corrective work. Negotiations eventually broke down and the plaintiff sued. *Id*. at 655. The trial court dismissed the complaint as time-barred. *Id*. at 650. On appeal, the appellate court held that the contractor's conduct estopped it from asserting the statute of limitations. In so ruling, the court found that the contractor had "engaged in continuing conduct to repair and correct the problems" and had not "merely engag[ed] in negotiation and investigation of the problems, but took affirmative steps to remedy the matters in apparent acknowledgement of its responsibility under the contract." *Id*. at 656. The court was also explicitly persuaded by the absence in the record of any evidence that the contractor disputed its responsibility for correcting the problems during the limitations period. *Id*. As such, the court concluded that the plaintiff's reliance on the continuing effort of the contractor to repair the problems had the natural effect of forbearing legal action. *Id*.

¶ 35    In *Senior Housing*, the plaintiff hired an engineering firm to develop a residential building and provide construction observation during construction. *Senior Housing*, 192 Ill. App. 3d at 768. Shortly after the building was completed, the plaintiff discovered that the building had moisture problems. *Id*. The engineering firm and the contractor inspected the building, and the firm directed the contractor to reapply caulk in a particular manner around certain windows and that, if that repair was successful, the contractor should re-caulk the entire building. *Id*. The re-caulking did not remedy the issue, however, and the firm eventually prepared bids for the application of a water repellant sealer to the building, submitted a list of contractors to plaintiff, and sent out bids. The problems persisted, and the plaintiff obtained an independent consultant to evaluate and repair the problem. When the firm did not respond to the plaintiff's demand for payment of the repair costs, the plaintiff sued. The trial court dismissed the complaint as time-

barred. Applying equitable estoppel, the appellate court reversed, holding that the engineering firm's conduct was sufficient to establish an estoppel. *Id*. at 722. The court noted that the firm "was responsible for and took responsibility to direct the repair work," and it instructed the contractor on several occasions as to what remedial steps to take and when. *Id*. The court was also explicitly persuaded by the fact that the engineering firm did not deny responsibility until after the plaintiff demanded restitution and had hired an outside contractor to make the repairs. *Id*. at 773. As such, the court determined that the firm "did much more than merely investigate," but acted in " 'apparent acknowledgement of its responsibility under the contract.' " *Id.* (quoting *Axia*, 150 Ill. App. 3d at 656).

¶ 36    In *Lombard Co. v. Chicago Housing Authority*, 221 Ill. App. 3d 730, 731-32 (1991), a building contractor sued to recover the costs it incurred stemming from construction delays caused by the defendant. The defendant filed a motion to dismiss based on the statute of limitations, which the trial court granted. *Id*. at 733. The contractor argued that the defendant should be equitably estopped from asserting that the complaint was time-barred, and it attached correspondence between the parties showing that the defendant never disputed liability, that settlement negotiations were limited to the extent of damages, and that the parties negotiated both before and after the expiration of the limitations period. *Id*. The appellate court agreed with the contractor that estoppel applied, reasoning that the correspondence showed that the conduct and representations of the defendant, coupled with the negotiations both before and after the expiration of the limitations period, lulled the contractor into a false sense of security that the claim would be settled regardless of the limitations period. *Id*. at 736.

¶ 37    Unlike the cases relied on by the Village, Linden did not concede liability for the defects noted in the Village's complaint and, as observed in the Village's own default and termination

letters, it steadfastly denied liability from the time the widespread failures were first observed in April 2013 and onward. The Village also does not identify any continuing conduct or affirmative steps taken by Linden to correct the problems sufficient to apply equitable estoppel. Although the Village places great emphasis on Linden's repairs to the 24-inch risers in 2014 and "possibly" 2015, we note that the 24-inch risers do not form the basis of any breach of contract count in the complaint, and the parties agree that the repairs to these risers were successful. We see no reason to find that Linden's successful repair of one aspect of the sanitary sewer system should estop it from asserting the statute of limitations concerning discrete aspects of the system for which it consistently denied responsibility for the defects and refused to investigate.

¶ 38   Although the Village asserts that Linden ordered materials in 2014 and 2015 to repair the 12-inch tank risers, the mere ordering of supplies falls far short of the defendant's four-year continuing conduct to repair in *Axia* that was deemed sufficient to work an estoppel there. Again, as alleged in the complaint, other than digging up one or more tanks immediately after the major rain event in April 2013, Linden thereafter denied all liability, refused to test the epoxy, and refused to perform any further testing or investigation of the sanitary sewer system. To the extent that the parties negotiated to repair the 12-inch risers, we observe that the attached correspondence confirms that the Village knew by June 2015 that Linden refused to make these repairs due to a lack of data indicating which specific 12-inch risers were leaking. As noted, the Village sent Linden a letter on July 7, 2015, stating that the letter was a "final notice that Linden must commence work to repair every 12" riser, the sealing for every electrical fixture in all tanks and complete all other punch list items within 14 days." The Village ultimately hired and paid Orenco to repair the 12-inch tank risers in November 2015 and April 2016. Thus, even if we agreed with the Village that the negotiations and Linden's ordering of supplies were sufficient to estop it from

asserting the statute of limitations, we would still conclude that estoppel would not be appropriate because Linden's conduct terminated well before the limitations period expired such that the Village would have had ample time to file suit. See *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 182 (2011) (holding equitable estoppel did not apply where defendant's conduct terminated with ample time to allow the plaintiff to file suit within the statute of limitations). Moreover, the Village's October 2016 termination letter observed that Linden had not communicated with the Village since approximately fall 2015, yet the Village inexplicably delayed filing suit until August 14, 2018.

¶ 39    Hummell's affidavit likewise does not aid the Village's position, as it does not identify any representation or conduct by either Linden or North American that reasonably lulled the Village into inaction. Instead, much of the affidavit focuses on the Village's own perceived shortcomings and inability to timely recognize the extent of the defects and identify the parties responsible. For example, Hummell stressed that the Village is a small municipality and that it had no taxing authority, no full-time employees or engineers, and no experience with wastewater treatment systems. He also contended that the Village could not determine the cause of the leaks any sooner because the defective work was underground, and it lacked the financial resources to hire an independent engineer to investigate the leaks and determinate causation. Although Hummell stated that Linden was cooperating to assess the defects and to make repairs, his affidavit was internally contradictory, in that he also averred that Linden failed to perform any investigation or repair to the sanitary sewer system, save for the 24-inch risers. We also observe that Hummell's statement that the parties negotiated in good faith through 2016 is belied by the letter of termination the Village sent to Linden in October 2016 stating that Linden was uncooperative and had not communicated with the Village since fall 2015. Indeed, the Village's brief states that Linden

ceased communicating "regularly" with the Village in "2015 at the earliest." In any event, it is well established that "the mere pendency of negotiations conducted in good faith is insufficient to give rise to estoppel." *Viirre v. Zayre Stores, Inc.*, 212 Ill. App. 3d 505, 515 (1991). The circuit court did not err in rejecting the Village's equitable estoppel argument.

¶ 40 The Village next argues that the statute of limitations should be equitably tolled until Linden ceased making repairs and communicating regularly with the Village. It argues that had it filed suit before providing Linden an opportunity to make repairs as contemplated by the one-year warranty provision in Contract B, Linden could have argued that the suit was prematurely filed. The Village also suggests that Contract B operated as a warranty to make repairs and is analogous to cases involving warranties to repair and the Uniform Commercial Code. See *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307 (2007). In the alternative, the Village asserts that the statute of limitations should be tolled under the discovery rule because it did not know who was responsible for the widespread system failures because the initial inspections by Linden and Orenco blamed each other for the problems and because the Village could not afford to hire an independent expert to determine which party was responsible. The Village asserts that it did not have "a clearer picture that causation rested with defendant Linden and/or defendant [ATI]" until Orenco performed a comprehensive audit and issued a report in 2016. The Village also asks that we consider the potential applicability of the "repair doctrine" to the discovery rule, stating that courts in other states have done so. In the only portion of its brief directed at defendant ATI, the Village asserts that its arguments regarding the discovery rule "apply with equal force to [the Village's] claims against defendant ATI."

¶ 41 We decline to toll the statute of limitations here. The equitable tolling of a statute of limitations may apply in only three circumstances: (1) where the defendant actively misled the

plaintiff; (2) where the plaintiff has been prevented from asserting his or her rights in some extraordinary way; or (3) if the plaintiff has mistakenly asserted his or her rights in the wrong forum. *American Family Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 32. Examples of extraordinary barriers include legal disability, an irredeemable lack of information, or where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Id.* Equitable tolling is rarely applied. *Id.* ¶ 33. Here, the Village does not allege that any defendant actively misled it or that it mistakenly asserted its rights in the wrong forum and, based on the allegations in the complaint, we cannot conclude that it was prevented from timely filing suit in some extraordinary way. As early as October 2013, based on Orenco's preliminary opinion and the Village's letter of default, the Village knew that it had sustained an injury, that the injury was actionable, and that Linden was responsible for the defects. Moreover, the Village has not identified any circumstance that prevented it from bringing suit in 2013 or at any time thereafter within the limitations period. Put simply, this case does not present the rare circumstance in which equitable tolling applies.

¶ 42 To the extent the Village asserts that the discovery rule and/or the "repair doctrine" should toll the statute of limitations, we deem the issue forfeited because the Village failed to develop any meaningful argument in support of its position. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires that an appellant's brief contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citations of the authorities and the pages of the record relied on." In this portion of its opening brief, the Village does not cite to the pages of the record relied on and, although it lists a number of cases it maintains have "similar facts" wherein the discovery rule extended the statute of limitations, the Village provided no discussion

or analysis of these cases. "The appellate court is not a depository into which a party may dump the burden of research." *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 13.

¶ 43    Even if not forfeited, the argument would fail on its merits. In its reply brief, the Village provided minimal discussion of one of the cases listed in its opening brief, namely *LaSalle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899 (1994). There, the plaintiff bank experienced heating problems in its building almost immediately after construction was completed. The bank investigated the cause of the problems and received advice or information about it from numerous sources (*id*. at 900), as well as received numerous non-actionable explanations for the heating problems (*id*. at 905). Noting that it was possible that the non-actionable explanations were enough to assuage the bank's concerns over the cause of the heating problems, the appellate court concluded that fixing the date of discovery that triggers the statute of limitations is a question of fact inappropriate for summary judgment in most cases. *Id*. at 905-06. *LaSalle* is easily distinguishable because, as noted by defendant ATI, the Village did not allege in its complaint, its responses to the motions to dismiss, or in Hummell's affidavit, that it was presented with any non-actionable explanation for the alleged defects in the design and construction of the sanitary sewer system. Accordingly, this argument, too, would fail.

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 46    Affirmed.